IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| JOHN R. WALKER, | : | Case No.: **C1-01-848** |
| | : | Administratively Stayed and |
| Petitioner, | : | Terminated from active docket. |
| | : | Related Case No.: **03-1100**, |
| v. | : | Ohio Supreme Court Appeal |
| | : | Dismissed September 24, 2003; |
| | : | Related Case No.: **C-030278**, |
| JEFFREY A. WOLFE, Warden | : | 1st District Court of Appeals, |
| | : | Dismissed June 9, 2003. |
| | : | |
| Respondent | : | JUDGE HERMAN J. WEBER |
| | : | MAG. JUDGE JACK SHERMAN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PETITIONER JOHN R. WALKER'S MOTION TO REINSTATE HIS PETITION FOR
A WRIT OF HEABEAS CORPUS**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Comes now Petitioner John R. Walker who respectfully requests this Court to reinstate his petition for a writ of habeas corpus upon his motion for good cause shown following. Petitioner has exhausted the State remedies, such as they are, and he returns to the US District Court to seek relief from the unlawful and unconstitutional "custody" of the Ohio Adult Parole Authority.

Respectively submitted,

By: _/s/ John R Walker_
John R. Walker/Petitioner-*pro se*


**CERTIFICATE OF SERVICE**

I hereby certify that one true copy of the following declaration was sent to the Respondent's Counsel of Record, Diane Mallory, Assistant Attorney General, Corrections Litigation Section, 150 East Street, 16th Floor, Columbus, Ohio 43215-6001 via 1st class US mail on October 20, 2003.

By: _/s/ John R Walker_
John R. Walker/Petitioner-*pro se*

## DECLARATION AND STATEMENT OF THE FACTS

**I, John R. Walker, the Petitioner, in the aforementioned action, do declare as follows:**

Petitioner Walker, formerly an inmate at Noble Corrections, was transferred to Noble County jail on August 16, 2002, for an extradition hearing supposedly based on a detainer warrant from Woodland, California. On September 4, 2002, he was released from this illegal detainer after filing a petition for a writ of habeas corpus in Noble County Court of Common Pleas, case numbers: 202-0096 and 202-2047, and he returned to his family's home in Virginia forthwith.

On September 5, 2002, the petitioner was contacted by telcom by Arlette Brown of the OAPA about his obligations for post release control. He was ordered to report to her by phone on the first and third Tuesday of each month, **which he has done faithfully**. In November and December, the petitioner was informed that the compact agreement paperwork had been sent to the authorities in Virginia; however, he was never contacted by the Virginia authorities. The petitioner had informed Mrs. Brown in December of 2002, that Virginia had denied a probation transfer from Texas in 1986, and that the parole authorities would probably deny this transfer also.

Following an order from the Senior US District Court Judge Weber, case number C1-01-848, the relator filed for a delayed appeal on issues of Post Release Control, which were determined to be unexhausted in the State courts because the OAPA sentenced the relator to three years of Post Release Control, R.C. 2967.28, during the pendency of his first appeal, case number 01-1435. Supreme Court case number 03-1100 was filed on June 23, 2003, to seek relief from the unbridled discretion and nondelegated power of the OAPA under the statutes in question; i.e., R.C. SS 2967.28, 2921.34, 2967.131, et seq.

In July and again in August of 2003, the petitioner was informed by Mrs. Brown that he would be released from Post Release Control, probably in September. However, on September 2, 2003, Mrs. Brown told Walker that he would be subjected to an additional two years of Post Release Control, and she ordered the relator to sign and return some documents that she would send him, which he received on September 8th. **(See Exs. 4 & 5)**. Similarly on March 7, 2002, Case Manager Leasure at Noble Corrections had threatened the petitioner with arrest after his release for his failure to sign similar Conditions of Supervision and Waiver of Extradition contracts because he could not relinquish his rights to habeas petition, rights of familial association, right to travel, and numerous other constitutionally guaranteed rights that would be abrogated by these contracts. **(Exs. 2 & 3)**.

2

**DECLARATION AND STATEMENT OF THE FACTS**

Petitioner Walker has been unable to work, has applied for Social Security disability insurance, and has a hearing soon with the Administrative Law Judge. He is under the care of medical physicians, he is attending substance abuse counseling, he is on a medication regimen, and is still attempting to receive psychiatric examinations, evaluations, and abdominal surgery, but he was impeded by his impecunious status until October 9, 2003. At that time upon examination and evaluation by a mental therapist, a psychiatry nurse practitioner, and a psychiatrist, Dr. Sultan Khani of the Virginia Commonwealth University/Medical College of Virginia Health System, all three agreed that Petitioner Walker had been suffering from-since childhood-**previously undiagnosed** *MANIC DEPRESSIVE/BIPOLAR DISORDER*. **(Ex 10).** Walker is now fifty-three years old.

The petitioner has been managing his own medical and psycho-sociological rehabilitation without the interference of the ODRC and OAPA where **he was denied medical and mental health rehabilitation while incarcerated at Noble Corrections because of the "deliberate indifference" of the Medical Director and hospital staff for thirty-two months**, as he languished in intense pain, mental anguish, and steadily deteriorating health in general.

Petitioner Walker seeks the relief that is adequate in this cause-that is speedy, beneficial, and complete. Whether issuance of the writ immediately, through personal recognizance bond without surety, a temporary restraining order with injunctive relief in this **expedited action** would satisfy the first two requirements until such time that this cause could be fully considered and adjudicated here in the US District Courts, so he prays for such relief that would maintain the present status quo, cause the least disturbance possible in the Petitioner's current medical condition, guarantee his access to the courts, and not deprive him access to his upcoming disability determination proceedings.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my belief, knowledge, and memory and that this declaration was executed on September 20, 2003.

Respectfully submitted,

By: *[signature]*
John R. Walker/Petitioner-*pro se*

# MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE HABEAS CORPUS PETITION

## A. INTRODUCTION

Comes now Petitioner John R. Walker, who respectfully requests extraordinary relief from the decisions of Ohio Adult Parole Authority per order of an "Unknown Agent" on October 4, 2001, to impose "Aggregate Sentence: Three years of Post Release Control, R.C. 2967.28," **(Ex. 4)** without notice, fair warning, any hearing, or *de minimus* Due Process protections. Likewise, Walker seeks relief from the other orders that would severely restrict his liberty vested interests in violation of US Constitution Articles I, Section 10, cl. 1; Art. III, Section 2; and the Fifth, Sixth, and Fourteenth Amendments.

This cause was on appeal in the Supreme Court of Ohio, case number: **03-1100**; however, that court declined jurisdiction and the appeal was dismissed on September 24, 2003. **(Ex. 6 & 16).** This case had been returned to the state courts to exhaust available remedies on claim three from US District Court, S.D. Ohio, Western Division at Cincinnati per **ORDER** of Senior District Court Judge Herman J. Weber on March 6, 2003, **(Doc. 24)** Case No.: **C1-01-848**, Petition for a Writ of Habeas Corpus.

Petitioner Walker filed for Disability Insurance and Supplemental Security Income on September 12, 2002, because he is unable to work due to numerous physical and mental infirmities and maladies. He has been scheduled to have a hearing soon with the Administrative Law Judge in Richmond, Virginia. **(Ex. 11).**

**Additionally**, on October 8th and 9th of 2003, Walker was deemed to have been suffering since childhood from **previously undiagnosed** *MANIC DEPRESSIVE/BIPOLAR DISORDER* by a mental health therapist, a psychiatry nurse practitioner, and a psychiatrist, Dr. Lakhani of the Virginia Commonwealth University/Medical College of Virginia Health System. **(Ex. 14).**

## B. PROCEDURAL and FACTUAL BACKGROUND

On December 1, 1999, Walker was convicted by guilty plea of Felonious Assault: R.C. 2903.11(A)(2) in Hamilton County Common Pleas Court, Case No.: **B-9907154**, and he was sentenced to serve three years of incarceration with eighty-three days credit. **No other sanctions**, such as RC 2967.28- Post Release Control, were stated in judgment entry or considered in recidivism statement. **(Ex. 12 & 13).** Walker's counsel, Larry Keller, did not effectively represent him, caused him to sign a guilty plea under duress after coercion and threats from the bench while in a fugue state, had attorney conflicts, failed to file for appeal of right, did not return his court documents, nor " ... demand speedy trial so that these charges are taken care of ... " before deserting Walker's case.

On May 24, 2001, Walker filed a motion for leave of delayed appeal, App. Rule 5(A), which was overruled and dismissed on June 29, 2001-four days before he even received the State's motion to dismiss- First Appellate District Court of Appeals, Case No.: **C010344**. **(Doc. 5, Ex. 3, 4, & 5).**

4

## MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE HABEAS CORPUS PETITION

On August 9, 2001, Walker filed his *pro se* discretionary appeal with Ohio Supreme Court, Case No,: **01-1435**, *State v. Walker,* 756 NE2d 1235 (Ohio 2001). On **October 4, 2001**, an "Unknown Agent" of the OAPA sentenced Walker to three years of Post Release Control. **(Ex. 4). The constitutionality of R.C. 2967.28 was Claim # 4, part 12 of the above appeal because of the page length constraints on pleadings, SCt R III(C).** On **October 24, 2001**, this appeal was DISMISSED "as not involving any substantial constitutional question." **(Doc. 5, Ex.6 & 7).**

On December 6, 2001, Walker filed his petition for a writ of habeas corpus, **(Doc. #1)** Case No.: **C1-01-848**, in the US District Court, S.D. of Ohio, Western Division at Cincinnati with Claim # 3: "Ohio Revised Code s 2967.28 is unconstitutional in whole as applied to the petitioner, and others similarly situated, because it denies Due Process of the Law as guaranteed by the U.S.C.A. Const, Amends. V, VI, and XIV; furthermore, it infringes upon the doctrine of Separation of Powers as applies to judicial process."

On December 31, 2001, Walker filed a Petition for Writ of Certiorari in the US Supreme Court, which denied the petition on February 19, 2002, because there had been no state court hearings on his appeals. Case No. **01-7805**, *Walker v. Ohio*, 122 SCt 1125 (2002).

On March 5, 2002, Case Manager Leasure of Noble Corrections ordered Walker to sign two documents-Conditions of Supervision and Waiver of Extradition **(Ex. 9 & 10)**-and then threatened him with arrest upon release from prison because the petitioner would not surrender his numerous Constitutionally protected rights by signing these contracts.

On August 16, 2002, Walker was released from Noble Corrections-having served his three years of "being warehoused" less good time-to the custody of Noble County Sheriff Smith for an extradition hearing-Noble County Court of Common Pleas, Case No.: **202-2047**, *In re Walker*-on a supposed warrant from Woodland, California. Walker had been denied speedy trial by Noble Corrections Record Supervisors Pamela Rudolph and Chad Haren despite twelve requests for enactment of R.C. 2963.30 and 18 USCA ss Appx. 1 & 2 and three ODRC security reviews over a thirty-three month period.

On this same day, Walker was ordered to sign two documents from the ODRC and the OAPA, and he <u>refused to sign them as well</u>. **(Ex. 1 & 2).** This unlawful detainer was rescinded upon the Relator's petition for a Writ of Habeas Corpus, Case No.: **202-0096**, *Walker v. Smith*, and Walker returned to his family's home in Virginia on September 4, 2002.

On September 5, 2002, Mrs. Arlette Brown contacted Walker by phone and ordered him to report to her on the first and third Tuesday of each month via phone-**which he has done faithfully since then**. In November and again in December of 2002, Mrs. Brown told him that the Compact Agreement paperwork had been sent to the parole authorities in Virginia; however, Walker never heard from these parole

5

authorities. Around this time Walker had informed Mrs. Brown that Virginia had denied transfer of probation from Texas in 1988, and would deny this request also.

On March 6, 2003, after reconsideration, the Court ordered Walker to exhaust claim #3 **because he did not have standing to bring this issue at the time of appeal to the Supreme Court of Ohio; therefore this claim was unexhausted in the state courts and he must file a delayed appeal within 30 days of order.** Senior District Judge Weber ordered this instant habeas petition administratively stayed in US District Court, Case No.: **C1-01-848**, until Walker returns to Federal court. **(Doc. #24).**

On April 4, 2003, Walker fax filed his motion for leave of delayed appeal, to meet the filing deadline **(Ex. 3)**, which was filed on April 8th by the clerk of courts, Case No.: **C-030278**. Per order on June 9, 2003, this case was overruled and dismissed by the Court of Appeals, First Appellate District. **(Ex. 5 & 15)**

On June 23, 2003, Walker's Supreme Court appeal, Case No.: **03-1100**, for relief from Post Release Control was filed for consideration of his "genuine issues" and to grant the appropriate relief as commanded by Constitutional and statutory law and *stare decisis*. On September 24, 2003, the Supreme Court of Ohio "declines jurisdiction to hear the case." **(Ex 6 & 16).**

Once in June and again in August of 2003, Mrs. Brown of the OAPA informed Walker during his, now monthly, report that he would be released from Post Release Control in September after serving twelve months of PRC. But then on September 2, 2003, Walker was told that he would have to serve two additional years of PRC and that she was mailing two documents that she ordered him to sign and return. **(Ex. 7 & 8).** Petitioner Walker will not surrender his numerous rights by signing them away now either because the OAPA is clearly applying newer revisions of PRC retroactively in violation of *ex post facto laws* prohibitions. See **Ex. 7, DRC 3019** (Rev 02/03) and **Ex. 9, DRC 3019** (Rev 8/00).

### C. APPOSITE FACTS

Petitioner Walker can show that he is entitled to this writ of habeas corpus because **1.)** the OAPA has been exercising quasi-judicial power over him; **2.)** the OAPA is prohibited by Constitutional law and *stare decisis* from exercising that power; **3.)** denial of the writ will cause injury for which there exists no other adequate remedy in the ordinary course of law.; and **4.)** he is entitled to *equitable tolling* of the one year statute of limitations pursuant to 28 USC s 2244(d)(1)(D).

First, it is important to note that Walker has at no time had access to Senate Bill 2, 146 v S 2 (Eff 7-1-96); 146 v S 269 (Eff 7-1-96); 147 v S111 (Eff 3-17-98) as applies to his sentencing and subsequent "pains and penalties;" therefore, his access to the courts has been impeded by this and numerous other inadequacies of the institutional law library at Noble Corrections, the court of appeals, and the ODRC

policies to afford prisoners legal counsel and/or legal material of an effective nature. **USCA Const. Amends. V, VI, & XIV.** Likewise, he had no access to pertinent and current unreported case cites or Federal Habeas Corpus Practice and Procedures. For example, see **Ex. 12**; this exhibit was proffered on April 23, 2002, as **Doc. 10,** Ex. 3, of Petitioner's "...Reply in Opposition to Respondent's Motion to Dismiss... ."

Second, Walker was sanctioned to three years of Post Release Control thereby doubling his sentence for his attempt to appeal his conviction in 2001, and now again he is being sanctioned for his appeal in 2003, thus being denied his right of access to the courts and Due Process of the Fifth and Fourteenth Amendments. This policy was clearly stated by a previous chairperson and other Parole Board members about prisoners under the "old law" who would be sanctioned for their litigation attempts. See *Gumpf* cases. Walker's Supreme Court appeal, Case No.: **03-1100**, was meant to test the constitutionality of Senate Bill 2 et seq. and Post Release Control R.C. 2967.28 et seq. **(Ex. 6 & 16).**

Third, it is crystal clear that the OAPA is attempting to apply several newer versions of R.C. 2967.28 et seq. to Walker's case-none of which apply-retroactively in violation of *ex post facto laws* prohibitions of Article I, Section 10 of the Bill of Rights. See, e.g., **Ex. 9, DRC 3019** (Rev 8/00) and **Ex. 7, DRC 3019** (Rev 02/03).

Fourth, Petitioner Walker has **refused to surrender** his numerous Constitutionally protected rights by **not signing** any Post Release Control, RC 2967.28, conditions of supervision, Compact Agreement, or extradition waivers; therefore, the OAPA has no contractual, jurisdictional, or lawful authority over him. Even though the petitioner reported by phone to Mrs. Brown during the past twelve months, **it cannot be construed that he has acquiesced to the more restrictive conditions of the Post Release Control contracts or agreements or given up one right to retain another right.**

Fifth, the recent psychiatric evaluation on October 8th and 9th, 2003, of Walker's long term and previously undiagnosed mental disorder can only bolster the credibility of his repeated claims of a plea bargain that was not given voluntarily, intelligently, and knowingly, but which was the "poison fruit" of threats and coercion from the Bench and constitutionally ineffective assistance of trial counsel, in which the Rule 11 hearing proceeded while petitioner was in a "fugue" state.

Additionally, Petitioner Walker just learned on September 16, 2003, from the Public Defenders Office, Attorney Annandale, that there are currently three cases under review in the Ohio Supreme Court concerning the notification of Post Release Control provisions during a Criminal Proceedings Rule 11 hearings, but he was unable to obtain any particulars from him, and the Ohio Supreme Court discretionary appeal was denied on September 24, 2003.

END OF APPOSITE FACTS

**MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE HABEAS CORPUS PETITION**

### D. LAW AND ARGUMENT

The timing of various legal events in this case's complicated legal history is vital to determining whether or not to apply the doctrine of "equitable tolling". The Petitioner will attempt to demonstrate the requisite "rare and exceptional" or "extraordinary circumstances" as dictated *by Irwin v. Department of Veteran Affairs*, 498 U.S. 89, (1990); and the factors adopted under *Wright v. State of Tennessee*, 628 F.2d. 949, (C.A. 6(Tenn.)1980J (en banc) and mandated in *Dunlap v. United States*, 250 F.3d 1001, 1009 (C.A. 6(Tenn.).2001); (advancing the factors outlined in *Andrews v. Orr*, 851 F.2d 146, 151; quoting *Wright, supra*), to excuse the delay in filing his federal habeas.

### Standard of Review

### I***Procedural Default/Equitable Tolling

The Petitioner will concede that his habeas petition was filed after the one-year limitation period governing his claims had expired. However, the one year limitation period applicable to 28 USC §2254, habeas petitions, is a statute of limitations which is subject to the doctrine of equitable tolling-rather than a jurisdictional prerequisite that bars review by the federal courts if it is not satisfied. *Dunlap v. United states*, 250 F.3d 1001, 1004-1005, (C.A. 6 (Tenn.) 2001) . See, e.g., *Irwin v. Department of Veteran Affairs*, 495 U.S. 89, 95,(1990).

Furthermore, the United States Supreme Court has permitted equitable tolling where the claimant, "actively pursued his judicial remedies by filing a defective pleading during the statutory period," or where the claimant was "induced or tricked by his adversary's misconduct in allowing the filing deadline to pass." *Id.* When determining the appropriateness of equitable tolling, the test set forth in *Andrews v. Orr*, 851 F.2d 146, 151,is the appropriate revel: of review to be considered in a habeas petition and all other cases, unless there is congressional authority to the contrary. *Dunlap,* 250 F.3d at 1009.

Petitioner Walker now claims his previously undiagnosed mental impairment-Bipolar Disorder-as an "affirmative defense" that bolsters his already credible statements about being in a *fugue* state before, during, and after the Rule 11 proceedings because of the affects to perception, reality, understanding, clarity, and cognizance of thought caused by such a serious condition. Furthermore, because these facts could not have been discovered through the exercise of due diligence previously before the statute of limitations had expired. The AEDPA states under Title 28 USC s 2244 **(d)(1)(D)** "... The limitation period shall run from the latest of--**(D)** the date on which the factual predicate

Petitioner avers that as soon as he had gained some knowledge of the proceedings and presentation of the issues, he attempted, albeit unsuccessfully, to pursue every judicial remedy known to him in an effort to obtain a review and a decision on the merits of his case see, First Appellate District Case No.:C010344

8

**MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE HABEAS CORPUS PETITION**

and Ohio Supreme Court Case Nos.: 01-1435 and 01-1636, to prove that his conviction and sentence are both unlawful and in violation of the United States Constitution, Amendments V, VI, and XIV.

The Petitioner had no knowledge of the evidence used against him until he received a partial evidentiary package from Ms. Diana M. Anneli-Ohio Disciplinary Counsel No.: AO-3498-on May 26, 2001, two days after the Petitioner had filed his delayed appeal-Case No.: C-010344. This evidence packet was sorely lacking, as it was illegible and items were missing, such as the Plea Bargain Agreement, the contract signed before the Rule 11 proceedings. In fact, Atty. Keller failed to return his client's documents for over eighteen (18) months, he failed to represent his client effectively and zealously, and he failed to file the Petitioner's notice of appeal, a "purely ministerial duty." *Roe v. Flores-Ortega,* 528 US 470 (2000).

These actions/inactions caused the more serious denial of the entire judicial proceedings, which the Petitioner had expressly requested and to which he had a right; therefore, counsel's alleged deficient performance, arguably, led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of the judicial proceeding. Accordingly, Atty. Keller's ineffective performance deprived the Petitioner of the notice of appeal and hence, the appeal altogether. In essence, Atty. Keller's performance fell far below the "reasonable standard" mandated in *Strickland v. Washington,* 466 U.S. 668(1984).

However, in *United States v. Cronic,* 466 U.S. 648, 659 (1984); *Penson v. Ohio,* 488 U.S. 75, 88, (1988); and *Smith v. Robbins,* 120. S.Ct. 746 (2000), held that the complete denial of counsel at a "critical stage" of a judicial proceeding mandates a "presumption of prejudice" because "the adversary process itself" has been rendered" presumptively unreliable." *Roe,* 120 S.Ct. at 1038 (quoting *Cronic,* 466 U. S. at 659). Hence, Petitioner Walker lacked constructive notice", i. e., Atty. Keller should have known of the thirty day time period, in which to file the requested appeal, and because of the reasonableness of the Petitioner remaining ignorant of his rights to proceed on delayed appeal, the Petitioner feels that he has not only met the factors set forth in *Wright v. State of Tennessee,* 628 F.2d at 953, identified by reference in Andrews v. Orr, 851 F.2d at 151; and affirmed in *Rose v. Dole,* 945 F.2d 1331, 1335 (C.A. 6(Tenn.)1991), and upheld in *Dunlap,* 250 F.3d at 1009; the Petitioner has superceded the five part test of Wright, supra, and its progeny.

Furthermore, if the Respondent should advance an argument that the State of Ohio would be prejudiced if this Court should decide to apply the doctrine of equitable tooling, their argument will be totally without foundation, because "prejudice may only be considered if other factors of the test are met...", *Dunlap,*; at 1009 (citing *Andrews,* 851 F.2d at 151; quoting *Baldwin County Welcome Center v.*

9

**MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE HABEAS CORPUS PETITION**

*Brown,* 466 U.S. 147, (1984), because, in the instant case, it is truly the Petitioner who has been prejudiced. *Andrews,* id. (citing *Fox v. Eaton Corp.* 615 F.2d 716, 718 (CA 6 (Ohio) 1980), cert denied, 450 US 935 (1981)).

Accordingly, "Equitable tolling stops the running of the statute of limitations in light of established equitable considerations." *Turner v. Smith,* 70 F.Supp.2d 785, 787 (E.D.Mich.(1999)) (quoting *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1125,(C.A. 3 (Del.) 1997). However, even though the instant petition was filed beyond the statute of limitations mandated by the "AEDPA", the Petitioner claims entitlement to equitable tolling, as he has demonstrated -not only five factors set out in *Andrews v. Orr*- but also, the requisite "'extraordinary circumstances' beyond his control making it is impossible to file the instant petition on time." at 787 (quoting *Calderon v. U. S. Dist. Court. for the Central Dist. of Cal.*, 112 F.3d 386,391 (C.A. 9 (Cal.) 1997). Likewise, it can be shown that the Petitioner has "actively pursued his judicial remedies" and was" induced or tricked" as accorded by *Irwin*, 498 U.S. at 458.

Therefore, the Sixth Circuit Court of Appeals has created a conflict between a United States Supreme Court precedent Irwin and *Dunlap*, regarding which standard to apply when requesting entitlement to the doctrine of equitable tolling. This Honorable Court should address this issue *de novo,* as it is important to be consistent in what standards to apply.

Thence, the Petitioner respectfully requests that this Honorable Court not hesitate to consider and apply the doctrine of equitable tolling, as the Petitioner reiterates that he has met the factors set forth in both *Wright v. State of Tennessee, supra,* and *Irwin v. Dept. Veterans Affairs, supra.*

### II***Ineffective Assistance of Trial Counsel--Procedural/Default

The Petitioner will concede that his claims may have been forfeited by failure to take a direct appeal of right. However, counsel's constitutionally ineffective performance may establish "cause" for such an omission. *Murray v. Carrier,* 477 US 478, 488 (1986). But sub par performance by a lawyer is only constitutionally ineffective if it causes prejudice. *Strickland v. Washington,* 466 U.S. 668, 687(1984). Nevertheless, abandonment is a "per se" violation of the Sixth Amendment. *US v. Cronic,* 466 U.S.648, 658-659(1984).

"The accused rights to be represented by counsel is a fundamental component of our criminal

10

**MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE HABEAS CORPUS PETITION**

justice system.... Their presence is essential because they are the means through which the other rights of the person on trial are secured. Without counsel, the right to a trial itself would be 'of little avail'...." *Cronic*, at 653-54

To begin with, the Petitioner pleaded guilty to Count 1: Felonious Assault, 2903.11(A)(2), ORCN on December 1, 1999. However, through the court's gross oversight, counsel was never appointed by the court, as the record will indicate. (Transcript of docket (T. d.) Trial Court Case No.: B9907154,( **Doc. 1, Ex. C).** Therefore, in light of the Petitioner being deprived the presence of counsel during *critical stages* of the prosecution-interrogation, reading of the indictment, arraignment, pretrial conference, &ca *per se* constitutional violation has been created that cannot be cured by any court. Prior to pleading guilty on December 1, 1999, the Petitioner attempted to contact Atty. Richard Magnus, who was supposedly appointed by the court to represent the Petitioner in his pretrial proceedings; however, no appointment was made. **(Doc. 1, Ex. C).** The Petitioner did attempt on numerous occasions to contact Atty. Magnus, to no avail.

On November 29, 1999, the petitioner's family retained Atty. Larry Keller to effectively and zealously represent him; on the contrary, Atty. Keller's representation could be construed as anything, but effective. Prior to withdrawing his plea of not guilty and entering a plea of guilty to the underlying offense on December 1, 1999, the Petitioner had an opportunity to speak with Atty. Keller for approximately twenty-five (25) minutes. The situation warranted further investigation thus necessitating a continuance. On trial day, the Petitioner met with Keller at which time he was informed of a *fast-track* plea negotiation for a three (3) year sentence, assuming that the Petitioner did not go to jury trial. After an ex parte meeting, counsel indicated to the Petitioner that counsel had requested a continuance in order to investigate the case further. On the contrary, Judge Crush emphatically denied the request for a continuance, threatened to give the Petitioner the seven (7) or eights(8) years, and made it clear that the *fast-track* plea negotiation of thre(3) years must be accepted now or he would get substantially more time in the trial if the Petitioner did not plead guilty immediately. **(Doc.1, Ex. D)**

Hence, the trial judge's remarks to the trial counsel, viewed from the crucial perspective of the Petitioner, can reasonably be understood as a threat. Upon conclusion of the sentencing proceeding;, the Petitioner "requested" Atty. Keller to responded that he would file the necessary paperwork. Thereafter, no action was ever initiated on the Petitioner's behalf by Atty. Keller. Therefore, the prejudice is presumed and no showing is required. See, *Cronic* 466 U.S. at 657; *Penson*, 488 U.S. at 88, 89; **Smith v. Robbins**,

11

MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE HABEAS CORPUS PETITION

*supra*, 120 S.Ct. at 764, 765.

Accordingly, the Petitioner has built a foundation for a *per se* violation of the Petitioner's right to effective assistance of trial counsel, Atty. Keller, to excuse any procedural default. **U.S.C.A. Const. Amend. V, VI, and XIV.**

### III***GROUNDS FOR RELIEF
### (a)**Grounds for relief No.: 1

**The Petitioner was denied the effective assistance of counsel in the trial court proceedings, in violation of the Petitioner's rights; U.S.C.A. Const. Amend. V, VI, and XIV.**

In the context of guilty pleas, the first half of the *Strickland* test is the same standard set forth for trial proceedings. The second, or *prejudice* requirement, on the other hand, focuses on whether counsel's ineffective assistance effected the outcome of the "plea" process. In other words, the Petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted of going to trial. The Strickland Court, however, held that prejudice is presumed when the Petitioner suffers the actual or constructive denial of counsel because the actual or constructive denial of counsel is presumed to result in **prejudice.** *Strickland*, 466 US at 692; (following *Cronic* (citations omitted)); *Penson* 488 US at 88, 89.

Specifically, Atty. Keller was constitutionally obligated to perfect the Petitioner's appeal, this is so, because when the Petitioner instructs counsel to initiate an appeal of right, he reasonably relies on his counsel to file the necessary notice of appeal. Counsel's failure to act can not be construed as a strategic decision; the filing of a notice of appeal is a purely "ministerial duty", and the failure to file reflects an inattention to of the Petitioner's wishes. See, *Roe, supra*, 120 SCt. at 1035;see, also, *Rodriguez v. United States*, 395 U.S. 327(1969);cf., *Peguerro v. United States*, 526 U.S 23, 28(1999).

The Petitioner did, in fact, "request" Atty. Keller to pursue an appeal, but Atty. Keller disregarded the Petitioner's specific instruction to file a notice of appeal; thereby, implicating counsel's deficient representation by failing his constitutionally obligated perfection of the Petitioner's appeal. See, *Ludwig v. United States*, 162 F.3d 456, 459 (C.A. 6(Ohio) 1998)(constitution is implicated when the defendant actually requests an appeal and counsel disregards the request).; *Castellanos v. United states*, 26 F.3d 717, 719-20 (C.A. 7(111.) 1994)(same). *Requests* is an important ingredient in the formula; the lawyer need not

appeal unless the client wants to pursue that avenue, as the accused has the ultimate authority to make fundamental decisions whether or not to take an appeal. See, *Jones v. Barnes*, 463 U.S. 745, 751(1983).

In summation, the Petitioner feels that he has shown a "per se" violation of his U.S.C.A. Const. Amend. V, VI, and XIV rights. Every court that has confronted the above scenario since *Penson* has held that failure to take an appeal, despite the defendant's requests, is ineffective assistance of counsel 'without' the probability of success on appeal assertion. See, *Bonneau v. United States* 961 F.2d 17 (C.A. 1( )1992) *Williams v. Lockhart*, 849 F.2d 1134, 1137,N.3,(C.A. 8( )1988). United States v. *Fox v. Eaton Co.* 615 F.2d 716, 718 (C.A. 6 (Ohio) 1980), cert. denied., 935 (1981). 93 f.2d 191, 195 (C.A. 9( )1993) *United States v. Davis.* 929 F.2d 555, 557 (C.A. 10(1991).

Accordingly, the Petitioner requests that the doctrine of equitable tolling be applied and that an evidentiary hearing beheld under the circumstances enumerated in *Townsend v. Saint*, 372 US 293, 313, (1963) to develop an unabridged record to afford Petitioner Walker a full and fair fact hearing.

### (b)**Grounds for Relief No. II

**The Petitioner's guilty plea is not valid because it was not knowingly, intelligently, or voluntarily made in violation of the U.S.C.A. Const. Amend. V, VI, and XIV rights of the Petitioner.**

The Petitioner next contends that his guilty plea was not intelligently and voluntarily made because it was the result of coercive amd threatening conduct perpetrated by Judge Crush and conveyed to the Petitioner by Atty. Keller, nor were the full consequences of his guilty plea known until October 5, 2001, **(Ex. 4, 12, 13).** Initially, this Court must determine if a plea of guilty is voluntary for the purposes of the federal constitution is question of federal law. *Henderson v. Morgan* 426 US 637 (1976); *Boykin v. Alabama* 395 US 238 (1969).

In order to be deemed valid under constitutional statutes, a guilty plea must be both "voluntary" and "intelligent. Boykin, 395 US at 242. In *Brady v. United States*, 397 U.S. 742(1910), the United States Supreme Court established the rule determining the voluntariness of a guilty plea. *Id.* at 755. Therefore this Honorable Court must assess the voluntariness of Petitioner's plea in light of "all of the relevant" circumstances. *Brown v. Perini,* 718 F.2d 784, 786 (C.A. 6(Ohio)1983); *cf. United states v. Usher*, 703 F.2d 956, 958(C.A. 6(Ohio)1983) (voluntariness of the plea assessed under the "totality of the circumstances"). This includes the "subjective perception" of the defendant at the time of his agreement to

13

# MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE HABEAS CORPUS PETITION

a guilty plea. *Euziere v. United States*, 249 F.2d 293, 294-95 (C.A. 10( )1957); accord, *United States v. Werker,* 535 F.2d 198, 202 (C.A. 2( )1976).

As evidenced in **Doc.1,** Ex.D, it can be safely assumed that Judge Crush's conduct was coercive and threatening to both the Petitioner and his counsel. The United States Supreme Court has stated that it is "intolerable" to force a criminal defendant to surrender one constitutional right (i.e., effective assistance of counsel, right to jury trial) to assert another (due process). See *Simmons v. United States*, 390 U.S. 377 (1968). The element of a coerced choice is nevertheless present in the Petitioner's case at bar. The trial court effectively forced the Petitioner to plead guilty with an unprepared attorney and to forego his Fifth, Sixth, and Fourteen rights. The Petitioner's attorney's lack of time to prepare for trial was particularly prejudicial to the Petitioner in, light of the fact-intensive nature of the State's case, counsel had limited preparation time in which to consult with his client, establish a defense, all in contrivance of the Petitioner's guaranteed constitutional rights.

Therefore, where the prosecutor or the judge, or both, "deliberately" employ their charging and sentencing powers to *induce* a particular defendant to plead guilty, the evidence that the trial judge threatened the Petitioner with a harsher sentence if convicted after trial, in order to *induce* him to plead guilty is evidenced in Exhibit D. See *Brady v. United States*, 397 U.S. 742, 751 (1970).

Apparently, the Petitioner's case "fell through the cracks of the system, forgotten until just before the Petitioner's rights to speedy trial were violated." Indeed, following his arrest the Petitioner languished in jail for eighty-three(83) days. No one can say with certainty what additional factual issues the Petitioner's counsel would have raised had he been afforded the opportunity to consult with his client prior to trial. In addition, the Petitioner, had no time to ponder Judge Crush's stern, overbearing, and intimidating statements, nor did the Petitioner have time to consider his attorney's **erroneous advice prior to entering his plea.** In fact, at most, the Petitioner had only several minutes to consider the entire situation. Thus, there was not ample time for reflection and deliberation upon the options available to him; hence, the eventual guilty plea was the product of judicial coercion and inducement.

Furthermore, one point that must brought to the Court's attention, during the Criminal Rule 11 colloquy, the Petitioner was not only in a *fugue* state, but he was ambiguously informed by Judge Crush that the Petitioner may be subject to discretionary supervision of the Ohio Adult Parole Authority, hereinafter OAPA pursuant to O.R.C. §2967.28-Post-Release Control, hereinafter PRC.

14

Then on October 4, 2001, two months after his discretionary appeal to the Ohio Supreme Court had been filed, the Petitioner was notified by the OAPA that he had been sanctioned to three years of quasi-judicial supervision; thereby, preventing his being able to return home to Virginia at the conclusion of his three year sentence. **(Ex. 4)**. Pursuant to the Guilty Plea/Agreed Sentence the Petitioner agreed to the plea with an understanding that he would receive a sentence of three years incarceration. There was never any indication whatsoever that by withdrawing his plea of not guilty and entering a plea of guilty to the offense that he would be subjected to the unwarranted quasi-judicial power of the OAPA. Having reviewed, in their totality, there is no way that the Petitioner would have relinquished his guaranteed constitutional right to a trial by jury then requiring the State to prove beyond a reasonable doubt his guilt. Having been induced by false promises and pretenses of an ambiguously open-ended sentence, the Petitioner's plea of guilty can hardly be said to be knowingly, intelligently, and voluntarily entered into.

In summation, the Petitioner's guilty is null and void, and he should be granted the opportunity to withdraw his previous plea and be able to exercise his constitutional rights, being so deprived. Furthermore, an evidentiary hearing is in order to prove beyond a reasonable doubt that these allegations are meritorious and the product of an induced and plea because of constitutionally ineffective assistance of counsel.

### [c] Grounds for Relief No. III

**Ohio Revised Code § 2967.28 is unconstitutional in whole as applied to the Petitioner and others similarly situated because it denies Due Process as guaranteed by the USCA Const. Amends. V, VI, and XIV, and further infringes on the doctrine of Separation of Powers as applies to the judicial process. USCA Article III, Section 2.**

The case at Bar advances that the trial court must inform the offender (Petitioner) at sentencing or at the time of the plea hearing that PRC is a part of the offender's sentence. ***Woods v. Telb, (2000)*** 89 Ohio St.3d 504, 513. However, the record in the Petitioner's case clearly indicates that he was not advised of the quasi-judicial and discretionary power of the OAPA to administer P.R.C. §2967.28. In the Petitioner's signed plea form **(Doc. 1, Ex F)** he may or may not have been informed by the trial judge that he may receive up to three years of PRC; however, as evidenced in **Ex. 12 and 13** there was no mention of the Petitioner being subjected to the rigors of PRC. This in its face value should suffice that this Honorable Court should find not only a violation of the Petitioner's Due Process rights as guaranteed under USCA Const. Amendments V, VI, and XIV, but also, a more serious violation of the Doctrine of Separation of

15

**MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE HABEAS CORPUS PETITION**

Powers. USCA Article III. Assuming that the attached exhibits are accurate. Court documents, it can hardly be said that the Petitioner would be placed on P.R.C. after he has completed the prison term to which he was sentenced, in the trial court. The trial court sentence of three years does not contemplate that the OAPA will mandate that the Petitioner will be placed on P.R.C. for three years.

Due Process prohibits procedures that abridge any "fundamental principle of liberty and justice which inheres in the very idea of free government and is the inalienable right of a citizen of such a government." *Twining v. New Jersey*, 211 US 78, 106. Here the liberty interest is one of freedom. PRC, RC §2967.28, implicates the right to be free. The statute gives the OAPA jurisdiction over an individual who has "once offended", he has "served his time", and he has paid his debt to society. This being the case, the State has the burden of proving that a compelling interest exists in its need to deny his unrestricted freedom.

This honorable Court should test the Post Release Control, RC §2967.28 for a Separation of Powers and Due Process problem under the pragmatic, flexible approach the judicial branch from accomplishing its Constitutionally assigned duties. *Nixon v. Admr. of Gen. Services.*, 433 u.s. 425, 442-43(1977). Moreover, the very core of due process affords to an individual the right to access to the courts, and O.R.C. §2967.28 abrogates this right. In essence, it creates an administrative prison court that is free from scrutiny or review. This offends the very notion of the Bill of Rights. See *In re Winship* 397 U.S. 358(1970). Only where applicable, the period of PRC. imposed is declared a component of the judicially imposed sentence; howadvocated by the United States Supreme Court and focus on the extent to which PRC, RC 2967.28 actually impedes ever, there is no clear indicator that the Petitioner was properly informed in the trial court proceedings. Thus, the Petitioner's plea was not involuntarily entered into and the statute in question, as applied to the Petitioner, and others similarly situated impedes the judicial system.

Therefore, if this Court apply the strict scrutiny syandard in this instant case, Post Release Control, RC 2967.28, and the actions of the OAPA, will be found to be devoid of any procedural safeguards whatsoever and declare it unconstitutional for violating the Due Process clauses of theOhio and US Constitutions. Therefore, the Petitioner's plea is **null and void** and the Petitioner should be granted the opportunity to withdraw his previous plea and be able to exercise his constitutional rights. Furthermore, an evidentiary hearing is in order to prove beyond a reasonable doubt that these allegations are meritorious and the product of an induced and coerced plea because of constitutionally ineffective assistance of

16

**MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE HABEAS CORPUS PETITION**

counsel.

Post Release Control, RC 2967.28, violates the Separation of Powers doctrine in that the Ohio General Assembly has created an independent quasi judicial branch of government within the prison system by extending powers of unbridled discretion and nondelegated authority to the prison managers who have an economic interest in keeping its numerous institutions full beyond their capacity.

The due process clause prohibits procedures, which abridge any "fundamental principle of liberty and justice which inheres in the very idea of free government and is the inalienable right of a citizen of such a government." See *Twining v. New Jersey*, 211 US 78, 106 (1908). Moreover, the very core of due process affords to an individual the right of access to the courts; R.C. 2967.28 abrogates this most important right. In essence, it creates an administrative prison court that is free from scrutiny or review; this offends the very notion of Bill of Rights. See *In re Winship*, 397 US 358 (1970). Therefore, if this Court apply the strict scrutiny standard in this instant case, Post Release Control, RC. 2967.28, and the actions of the OAP A, will be found to be devoid of any procedural safeguards whatsoever thereby declaring it unconstitutional for violating the Due Process clauses of the US and Ohio Constitutions.

Post Release Control, RC. 2967.28, violates the Separation of Powers doctrine in that the General Assembly has created an independent quasi-judicial branch of government within the prison system by extending powers of unbridled discretion and nondelegated authority to the OAPA of: 1.) whether to impose a period of post release control; 2.) how long to impose the period of post release control; 3.) the conditions of post release control; 4.) the determination of whether post release control has been violated; and 5.) the penalty for pot release control violations; all without mandatory Due Process protections or intervention from the courts. **US Const. Article III et seq.; US Const. Amend. V, VI, and XIV; Ohio Const. Article IV, Section I.**

The separation of the judiciary from the executive and administrative branches of government has been a long-standing tenet in our system of democracy. In the **Federalist Paper** No. 11:, Alexander Hamilton stressed the need for judicial independence: "For I agree, that 'there is no liberty if the power of judging be not separated from the legislative and executive powers. ", Hamilton, **The Federalist** (1788), quoting from 1 **The Spirits of the Laws** 1868. The separation of powers doctrine is the very doctrine of our democracy, and the US Supreme Court has consistently "given voice to, and reaffirmed, the central judgment of the Framers of the Constitution that, within our political scheme, the separation of

17

**MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE HABEAS CORPUS PETITION**

governmental powers into three coordinated branches is essential to the preservation of liberty." See, e.g., *Morrison v. Olson*, 487 US 654, 685-696 (1988); *Bowsher v. Synar*, 478 US 714, 725 (1986). "Madison, in writing about the principle of separated powers, said: "No political truth is certainly of greater intrinsic value or is stamped with the authority of more enlightened patrons of liberty. ", *Mistretta v. United States*, 488 US 361 (1989),

citing **The Federalist** No. 47, at 324 (J. Cooke ed. 1961). Under RC 2967.28, the OAPA. may without due process restraints charge, determine guilt, and impose a jail sentence without benefit of judicial intervention. This, by its very core, violates the principles Madison admonished us to hold dear. Furthermore, the Supreme Court of Ohio has held that "[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers." *State ex rei Johnson v. Taulbee*, 423 NE2d 80 (1981), paragraph one of the syllabus; *State v. Hochausler*, 668 NE2d 457 (1990). Judicial review by a neutral, detached magistrate is sacrosanct, but R.C. 2967.28 does not allow for judicial review by way of appeal or any judicial intervention in any way in the OAPA imposes post release control. This absolution from judicial intervention threatens the very foundation of our judiciary. An extreme danger exists when the executive branch through its police force, or the OAPA, determines the offender's charges, pronounces his guilt, and determines his punishment. The presence of a neutral, detached magistrate to intervene between the offender and his accuser is paramount and guarantees the right of access to the court system.

Here, the legislative branch has created an independent, quasi-judicial branch of government within the prison system; Article IV, Section I of the Ohio Constitution and Article III, Section 2 of the US Constitution mandates that judicial power shall vest in specifically named courts, and the OAPA is not one of them. The legislature has given the OAPA legislative, police, and judicial powers. It may define the behavior that is forbidden, police the behavior by charging for a violation of the forbidden behavior, and then, may determine guilt and set punishment. Thus, the very framework of the post release control system violates the true understanding of due process and offends the separation of powers doctrine. Furthermore, PRC is neither civil in nature nor remedial in purpose. Confer *Johnson V. United States*, 529 US 694, 695 (2000); **Gozlon-Perez** v. United *States*, 498 US 395, 400-401 (1991) (the person under supervised release is overseen by the sentencing court).

The United States Supreme Court said: "as we have stated in *Buckley*, the system of separated powers and checks and balances established in the Constitution was regarded by the Framers as 'a self-

18

**MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE HABEAS CORPUS PETITION**

executing safeguard against the encroachment or aggrandizement of one of the branches at the expense of the other.'" *Morrison v. Olson,* at 693 (quoting *Buckley v. Valeo*, 424 US 1, 122(1976). Likewise, "[e]very law enacted by Congress must be one or more of its powers enumerated in the Constitution. 'The powers of the legislature are defined and limited; and that those limits may not be mistaken, or forgotten, the constitution is written. ", *United States v. Morrison*, 529 US 598, 607 (2000) (quoting *Marbury v. Madison*, 1 Cranch 137, 176,2 LEd. 60 (1803)). The determination of guilt in a criminal matter and the sentencing of a defendant convicted of a crime are solely the province of the judiciary. *State ex rel. Bray v. Russell*, 729 NE2d 359 (2000). As has been clearly shown by the judgment entry and recidivism statement in this case, the trial court judge at no time considered that Walker would be subjected to the sanctions of the OAPA in sentencing him to three years of post release control on October 4,2001.

### E***CONCLUSION

The Petitioner proclaims his innocence; thus, in holding that he was denied the right to effective assistance of counsel in filing a notice of appeal in order to prosecute a judicial proceeding to which he was entitled the Writ of Habeas of Habeas Corpus should be issued. This Court has the authority to **STAY** the OAPA representatives from initiating any orders, threats, warrants, detainers, or any other proceedings against Petitioner Walker fro the pendency of these Federal Court proceedings pursuant to 28 USC s 2251 to protect the petitioner against unwarranted actions by the State of Ohio.

Furthermore, Petitioner Walker prays for that in light of the magnitude of the violations of the Constitutional rights he has suffered that the Doctrine of Equitable Tolling be applied pursuant to 28 USC ss 2244(d)(1)(D) and 2254(e)(2)(A)(ii) and 2254(e)(2)(B) and that a Writ of Habeas Corpus should issue before this live case and controversy becomes moot while awaiting Federal hearings.

Respectively submitted,

By: _John R Walker_
John R. Walker/Petitioner-*pro se*

### CERTIFICATE OF SERVICE

I hereby certify that one true copy of the foregoing was sent to the Respondent's Counsel of Record, Diane Mallory, Assistant Attorney General, Corrections Litigation Section, 150 East Gay Street, 16th Floor, Columbus, Ohio 43215-6001 via 1st class US mail on October _20_, 2003.

By: _John R Walker_
John R. Walker/Petitioner-*pro se*

19