DENNIS WINKFIELD, Petitioner-Appellant, v. MARGARET BAGLEY, WARDEN, Respondent-Appellee.

No. 02-3193

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

66 Fed. Appx. 578; 2003 U.S. App. LEXIS 10789

May 28, 2003, Filed

NOTICE:

[**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

SUBSEQUENT HISTORY: US Supreme Court certiorari denied by *Winkfield v. Bagley*, 2003 U.S. LEXIS 7762 (U.S., Oct. 20, 2003)

PRIOR HISTORY: ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO. 01-00432. Graham. 01-16-02. *State v. Winkfield, 2000 Ohio App. LEXIS 1303 (Ohio Ct. App., Franklin County, Mar. 30, 2000)*

DISPOSITION: Affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: Petitioner inmate appealed an order of the United States District Court for the Southern District of Ohio, which dismissed his petition for habeas relief, filed under *28 U.S.C.S. § 2254,* as barred by the one year statute of limitations in *28 U.S.C.S. § 2244*(d).

OVERVIEW: The inmate made no challenge to his conviction of any kind in any forum until almost two years after the April 24, 1997 deadline, when he filed his Ohio R. App. P. 5(A) motion for leave to file a delayed appeal. However, that motion had no effect on the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limitations period, as the AEDPA limitation period had expired. His Ohio R. App. P. 26(B) application also did not toll the limitations period, as it was filed over three years after the limitations period expired. The inmate argued that he was prevented from timely filing the instant petition because his initial appellate counsel not only failed to ever advise the inmate that a new trial motion had been denied and thus the time to appeal was running, but he actively misled him into believing the motion and his direct appeal were still pending. The court, however, found that the inmate did not allege that counsel action prevented him from filing a habeas application before April 24, 1997. Finally, the facts of this case did not warrant equitable relief. The inmate failed in his duty to monitor the status of his state appeal.

OUTCOME: The district court's judgment was affirmed.

CORE TERMS: limitations period, delayed, statute of limitations, expired, habeas petition, specification, one-year, equitable tolling, diligently, restart, toll, direct appeal, impediment, conviction became final, state action, tolled, leave to file, pro se, ineffective assistance of counsel, ineffective assistance, constructive knowledge, filing requirement, limitation period, effective date, death penalty, timely filing, direct review, one year, petitioner-appellant, aggravated

LexisNexis(R) Headnotes

Civil Procedure: Appeals: Standards of Review: Clearly Erroneous Review
Civil Procedure: Appeals: Standards of Review: De Novo Review
[HN1] The court of appeals reviews a district court's legal conclusions de novo and its findings of fact for clear error.

Criminal Law & Procedure: Habeas Corpus: Time Limitations
[HN2] Under the Antiterrorism and Effective Death Penalty Act of 1996, a prisoner has one year from the

completion of the direct review of his case to commence a collateral attack on his conviction. *28 U.S.C.S. § 2244*(d)(1). This one year limitation period runs from the latest of: (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the United States Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. § 2244(d)(1).

Criminal Law & Procedure: Habeas Corpus: Time Limitations
[HN3] The United States Court of Appeals for the Sixth Circuit provides a one year grace period for convictions which became final prior to the April 24, 1996, effective date of the Antiterrorism and Effective Death Penalty Act of 1996.

Criminal Law & Procedure: Habeas Corpus: Time Limitations
[HN4] The Antiterrorism and Effective Death Penalty Act of 1996 limitations period may be tolled for that period of time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. *28 U.S.C.S. § 2244*(d)(2). The tolling provision does not, however, revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.

Criminal Law & Procedure: Habeas Corpus: Time Limitations
 [HN5] Leave to file a late notice of appeal can be sought at any time, even many years after conviction. If the one-year period of limitations did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief. The statute of limitations provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) would thus be effectively eliminated, a clearly unacceptable result. Although a delayed appeal thus does not restart the AEDPA limitations period, it may toll it.

Criminal Law & Procedure: Habeas Corpus: Time Limitations
[HN6] While the filing of an Ohio App. R. 26(B) application, like a delayed appeal, may serve to toll, it does not restart the Antiterrorism and Effective Death Penalty Act of 1996 limitations period.

Criminal Law & Procedure: Habeas Corpus: Procedural Default
[HN7] If a procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the state.

Criminal Law & Procedure: Habeas Corpus: Time Limitations
[HN8] *28 U.S.C.S. § 2244*(d)(1)(B) requires a causal relationship between the unconstitutional state action and being prevented from filing the petition.

Criminal Law & Procedure: Habeas Corpus: Time Limitations
[HN9] The United States Court of Appeals for the Sixth Circuit has held that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) deadline is subject to equitable tolling. The court applies a five-factor equitable tolling test to AEDPA tolling. Those factors are: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. The court also noted that the doctrine of equitable tolling should be applied sparingly.

Criminal Law & Procedure: Habeas Corpus: Time Limitations
[HN10] Courts are reluctant to find that a lack of actual notice of the Antiterrorism and Effective Death Penalty Act of 1996, or ignorance of the law in general, may excuse a late filing.

Criminal Law & Procedure: Habeas Corpus: Time Limitations
[HN11] In order for equitable tolling to apply, a habeas petitioner must diligently pursue habeas relief.

COUNSEL: For DENNIS WINKFIELD, Petitioner - Appellant: Kort W. Gatterdam, Kravitz & Kravitz, Columbus, OH.

For MARGARET BAGLEY, Respondent - Appellee: Stephanie L. Watson, Office of the Attorney General, Columbus, OH.

JUDGES: Before: CLAY and GIBBONS, Circuit Judges; and DUGGAN, District Judge. *

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

OPINIONBY: Julia S. Gibbons

OPINION: [*579] JULIA SMITH GIBBONS, Circuit Judge. After a jury trial, petitioner-appellant Dennis Winkfield was convicted in Ohio state court of aggravated murder with a death penalty specification (calling for the death penalty, life in prison without parole, or life with parole after[**2] twenty, twenty-five or thirty years) and a firearm specification (calling for a mandatory three-year prison term upon conviction), kidnapping, and gross sexual imposition. Winkfield appeals a district court judgment dismissing his petition for federal habeas corpus relief, filed under *28 U.S.C. § 2254*, as barred by the one year statute of limitations in *28 U.S.C. § 2244(d)*. For the reasons [*580]set forth below, we affirm the district court's dismissal of the petition.

I.

On May 22, 1986, petitioner-appellant Dennis Winkfield was convicted in the Franklin County Court of Common Pleas of aggravated murder with specification, kidnapping with specification, and gross sexual imposition, in violation of *§§ 2903.01, 2911.11, and 2907.05* of the Ohio Revised Code. On August 1, 1986, Winkfield was sentenced to thirty years in prison, with a three year firearm specification to run consecutively. At sentencing, Daniel M. Hunt, one of Winkfield's trial attorneys, stated that his co-counsel Roger Warner would handle Winkfield's appeal.

Warner did not file an appeal on Winkfield's behalf. On June 5, 1987, Warner wrote to Winkfield explaining that[**3] his decision to delay filing an appeal was strategic:

Contrary to your mistaken belief at this time, we have been working on your case ... Delay at this point in time can only help your case. I cannot emphasize that enough ... the negligence that you allege in your letter is not correct-- it is a trial tactic, or an appellate tactic, designed to be of benefit to you ... One must consider what is the makeup of the [Supreme Court] potentially five to ten years from now. The further I can delay it now, the better the chance we will have a favorable court reviewing your case some time in the future ... Therefore, the decision to not expedite the appellate process is a carefully reasoned and thought out process with consultation with numerous other attorneys on your behalf.

On April 11, 1989, Warner sent another letter to Winkfield explaining that the delay in filing an appeal was a litigation tactic:

Since my last letter to you, no Entry has been filed by the trial court concerning your case. Until there is an Entry, the appellate time for filing the Notice of Appeal has not yet begun ... We are not in a hurry for the trial court to render that Entry. In addition, [**4] Judge Gillie has now retired and there is a new trial judge in his seat. As such, I do not expect this oversight on the part of the court to become known to the court for quite some time unless someone points it out to them.

On August 3, 1989, Warner again informed Winkfield in writing that "there has not been any change in the status of your case." Both the April and August 1989 letters were false, since Winkfield's motion for a new trial had been denied on December 15, 1988. Warner did not contact Winkfield after August 3, 1989.

Almost ten years later, on May 13, 1999, Winkfield filed a pro se motion for leave to file a delayed appeal pursuant to Ohio App. R. 5(A). On April 22, 1999, the Ohio Court of Appeals for the Tenth Appellate District granted Winkfield's motion. The court observed that "former counsel for Mr. Winkfield did not pursue a direct appeal on his behalf. Therefore, Mr. Winkfield has been denied effective assistance of appellate counsel." New counsel was appointed to represent Winkfield.

On March 30, 2000, the Ohio Court of Appeals for the Tenth Appellate District affirmed Winkfield's conviction and sentence. On August 2, 2000, the Supreme Court of Ohio[**5] dismissed Winkfield's subsequent motion for a discretionary appeal sua sponte. On June 27, 2000, Winkfield filed a pro se application to reopen his appeal pursuant to Ohio App. R. 26(B). The Ohio Court of Appeals for the Tenth Appellate District denied his application on August 23, 2000. On December 6, 2000, the Ohio Supreme Court dismissed Winkfield's [*581]subsequent motion for a discretionary appeal sua sponte.

On May 8, 2001, Winkfield filed a petition for writ of habeas corpus in the United States District Court for the

Southern District of Ohio. On November 9, 2001, the magistrate judge determined that:

petitioner's conviction became final in 1986, when the time period expired for filing a timely appeal from his convictions. The statute of limitations therefore began to run on the effective date of the AEDPA, April 24, 1996, and expired one year later, on April 24, 1997. Because the statute of limitations had expired prior to petitioner's May 13, 1999, motion for delayed appeal and his June 27, 2000, application for delayed reopening of his appeal, neither of these actions tolled the running of the statute of limitations under *28 U.S.C. § 2244[\*\*6] (d)(2)*.

The magistrate judge thus recommended that the petition be dismissed for failure to comply with the one-year statute of limitations under *28 U.S.C. § 2244(d)*. On January 16, 2002, the district court adopted the recommendation of the magistrate judge.

II.

[HN1] This court reviews a district court's legal conclusions de novo and its findings of fact for clear error. *Valentine v. Francis, 270 F.3d 1032, 1034 (6th Cir. 2001)* (citing *Harris v. Stovall, 212 F.3d 940, 942 (6th Cir. 2000))*.

A.

[HN2] Under the *Antiterrorism and Effective Death Penalty Act of 1996* (AEDPA), a prisoner has one year from the completion of the direct review of his case to commence a collateral attack on his conviction. See *28 U.S.C. § 2244(d)(1)*. This one year limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, [\*\*7] if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* [HN3] The Sixth Circuit provides a "one year grace period for convictions which became final prior to the April 24, 1996, effective date of the AEDPA." *Isham v. Randle, 226 F.3d 691, 693 (6th Cir. 2000)*. Assuming Winkfield's conviction became final before 1996, he would have had until April 24, 1997 to file his habeas petition, well before his actual May 8, 2001, filing date.

[HN4] The AEDPA limitations period may be tolled for that period of time "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *28 U.S.C. § 2244(d)(2)*. "The tolling provision does not, however, 'revive' the limitations period[\*\*8] (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Rashid v. Khulmann, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)*; see also *Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000)* (holding that "[a] state-court petition ... that is filed following the [\*582] expiration of the limitations period cannot toll that period because there is no period remaining to be tolled").

Winkfield made no challenge to his conviction of any kind in any forum until almost two years after the April 24, 1997, deadline, when he filed his *Rule 5(a)* motion for leave to file a delayed appeal in the Ohio Court of Appeals. Consequently, his conviction became final in 1986. Winkfield's *Rule 5(a)* motion had no effect on the AEDPA limitations period. As the Sixth Circuit noted in *Searcy v. Carter, 246 F.3d 515, 519 (6th Cir. 2001)*:

[HN5] Leave to file a late notice of appeal can be sought at any time, even many years after conviction. If the one-year period of limitations did not begin to run until such an application[\*\*9] for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief. The statute of limitations provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result.

Cf. *Wheeler v. Jones, 226 F.3d 656, 660 (6th Cir. 2000)* (noting that "if [habeas petitioner's] position were adopted, state court judgments would never attain finality because they would always be subject to reconsideration on a motion for a delayed appeal"). Although a delayed appeal thus does not restart the AEDPA limitations period, it may toll it. *Searcy, 246 F.3d at 519*. In this case, however, since the one-year AEDPA limitation period had expired over two years

before Winkfield filed his *Rule 5(a)* motion, there remained no time left to toll.

Winkfield's June 27, 2000, *Rule 26(b)* application to reopen his appeal also has no effect on the AEDPA limitations period. [HN6] While the filing of a *Rule 26(b)* application, like a delayed appeal, may serve to toll, it does not restart the AEDPA[**10] limitations period. See *Searcy, 246 F.3d at 519*; see also *Linton v. Randle, 13 Fed. Appx. 280, 281, 2001 WL 670018 (6th Cir. 2001)* (unpublished) (holding that the grant of a *Rule 26(b)* motion by the Ohio Court of Appeals does not restart the *§ 2244(d)(1)* limitations period). In this case, since Winkfield's *Rule 26(b)* application was filed over three years after the one-year AEDPA limitations period had expired, tolling is inapplicable.

Winkfield argues that he was prevented from timely filing the instant habeas petition because Warner, his initial appellate counsel, "not only failed to ever advise his client the new trial motion had been denied and thus the time to appeal was running, but he actively misled him into believing the motion and his direct appeal were still pending." Winkfield notes that the Ohio Court of Appeals found Warner's actions in this regard to be ineffective assistance of counsel, and argues that this constitutes "an impediment to filing an application created by State action" pursuant to *28 U.S.C. § 2244(d)(1)(B)*.

The ineffective assistance of Winkfield's initial appellate counsel[**11] constitutes state action. See *Murray v. Carrier, 477 U.S. 478, 489, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986)* [HN7] ("If the procedural default is the result of ineffective assistance of counsel, the *Sixth Amendment* itself requires that responsibility for the default be imputed to the State"); see also *Coleman v. Thompson, 501 U.S. 722, 754, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991)*. However, Winkfield has failed to show that the state action (Warner's failure to pursue a direct appeal in state court) prevented him from filing a habeas application prior to April 24, 1997. [*583] [HN8] "*Section 2244(d)(1)(B)* requires a causal relationship between the unconstitutional state action and being prevented from filing the petition." *Dunker v. Bissonnette, 154 F. Supp.2d 95, 105 (D. Mass 2001)*. In this case, Winkfield has not alleged that Warner erroneously informed him that he had no federal remedies. No connection has been established between Warner's ineffective assistance and Winkfield's ability to file a federal habeas petition. The fact that Winkfield was able to file his *Rule 5(a)* motion for a delayed appeal while the alleged impediment still existed ([**12] i.e., while operating under the mistaken belief that his appeal was pending or was being strategically delayed by Warner) also suggests that Winkfield was not prevented by Warner's advice from timely filing his habeas petition. Cf. *Dean v. Pitcher, 2002 U.S. Dist. LEXIS 24628, No. Civ. 02-71203-DT, 2002 WL 31875460, at *3 (E.D. Mich. Nov. 7, 2002)* ("The fact that petitioner eventually filed his habeas petition even though his state appellate counsel had advised him not to do so demonstrates that his counsel's advice was not an unconstitutional impediment to the filing of his habeas petition.") Therefore, Winkfield has failed to "allege facts that establish that he was so inhibited by the state's action that he was unable to file and state a legal cause of action before the limitation period expired." *Neuendorf v. Graves, 110 F. Supp.2d 1144, 1153 (N.D. Iowa 2000)* (quotation omitted).

B.

The Sixth Circuit has held that [HN9] the AEDPA deadline is subject to equitable tolling. See *Dunlap v. United States, 250 F.3d 1001, 1004 (6th Cir. 2001)*. In Dunlap, the court applied the five-factor equitable tolling test articulated in *Andrews v. Orr, 851 F.2d 146, 151 (6th Cir. 1988),*[**13] to AEDPA tolling. *Dunlap, 250 F.3d at 1008*. Those factors are: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Id.* The court also noted that the doctrine of equitable tolling should "be applied sparingly." Id.

The facts in this case do not support equitable relief. Although Winkfield argues that he was "unaware of the filing requirements for his direct appeal" and that he had neither actual nor constructive knowledge of the AEDPA limitations period (Appellant's Brief at 24), [HN10] "courts are reluctant to find that a lack of actual notice of the AEDPA, or ignorance of the law in general, may excuse a late filing." *Starnes v. United States, 2001 U.S. App. LEXIS 30042, No. 99-5144, 2001 WL 1006252, at **4 (6th Cir. Aug. 22, 2001)* (unpublished) (citing *Fisher v. Johnson, 174 F.3d 710, 714-15 (5th Cir. 1999)* ("ignorance of the law, even for an incarcerated[**14] pro se petitioner, generally does not excuse [late] filing.")).

Moreover, [HN11] in order for equitable tolling to apply, the petitioner must diligently pursue habeas relief. See *Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)*; *Coleman v. Johnson, 184 F.3d 398, 403 (5th Cir. 1999)*; *Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998)*. Winkfield argues that he "did diligently pursue his rights by writing to his attorney about the status of his case" and adds that "he relied upon his attorney who

repeatedly advised him that his appeal was pending and that it was appellate strategy to wait to have his appeal decided." Winkfield diligently monitored the status of his appeal between 1986 and 1989. However, he has offered no explanation for the almost ten-year delay between his last communication with Warner and the filing of his *Rule 5(a)* motion. As a result, Winkfield has "failed in his [*584] duty to monitor the status of his appeal." *Brown v. United States, 20 Fed. Appx. 373, 375 (6th Cir. 2001)* (unpublished) (citing *Coleman, 184 F.3d at 402*); see also *Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151, 80 L. Ed. 2d 196, 104 S. Ct. 1723 (1984)*[**15] ("one who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence"). To permit equitable tolling under these circumstances "would significantly prejudice the government, which has an interest in bringing finality to the criminal appeals process." *Starnes, 2001 U.S. App. LEXIS 30042*.

III.

For the foregoing reasons, we affirm the district court's dismissal of the petition.