STATE OF OHIO, Plaintiff-Appellee, - vs - TERRELL SPIKES, Defendant-Appellant.
ACCELERATED CASE NO. 97-L-158

COURT OF APPEALS OF OHIO, ELEVENTH APPELLATE DISTRICT, LAKECOUNTY

129 Ohio App. 3d 142; 717 N.E.2d 386; 1998 Ohio App. LEXIS4163

September 4, 1998, Decided

PRIOR HISTORY: [***1]

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of Common Pleas. Case No. 97 CR 000138.

DISPOSITION: JUDGMENT: Affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: The Lake County Court of Common Pleas (Ohio), following defendant's guilty plea to failure to comply with an order or signal of a police officer in violation of *Ohio Rev. Code Ann. § 2921.331*, sentenced defendant to an agreed six-month prison term. The trial court notified defendant that he could be subject to bad time and post-release control imposed by the parole board. Defendant appealed the sentence imposed.

OVERVIEW: Defendant argued that *Ohio Rev. Code Ann. §§ 2967.11*, .28 were unconstitutional on due process, double jeopardy, separation of powers, and equal protection grounds. Those statutes allowed the parole board to impose bad time credit, and to subject a prisoner to post-release control upon their release from prison. The appellate court held that defendant lacked standing to bring a constitutional challenge to the statutes. Defendant did not allege that he had been subjected to the bad time provisions of *Ohio Rev. Code Ann. § 2967.11* or the post-release control provisions of *Ohio Rev. Code Ann. § 2967.28*. Nor did the record indicate that defendant had been so subjected. He merely claimed that because he was sentenced pursuant to these provisions, he had the potential to be subjected to extended prison time or post-release control. Therefore, the issues raised on appeal were not yet ripe for review. Defendant failed to allege a concrete injury which would establish standing to bring the instant appeal. The appellate court held its decision did not create a res judicata bar to a future constitutional challenge by defendant.

OUTCOME: The judgment was affirmed.

CORE TERMS: bad time, post-release, sentence, prisoner, parole board, ripe, standing to challenge, sentencing, jail, prison term, parole, intrusion, Fourth Amendment, subjected, probation, prison, law enforcement, probable cause, probationer, infraction, guidelines, detached, adult, assignment of error, imprisoned, probation revocation, constitutional right, criminal prosecution, revocation hearing, neutral magistrate

LexisNexis(R) Headnotes

Criminal Law & Procedure: Postconviction Proceedings: Parole
[HN1] *Ohio Rev. Code Ann. § 2967.11* establishes a system whereby the parole board may extend the sentence of a prisoner if he or she is found to have committed an act in prison that would constitute a criminal offense. This has been labeled "bad time." *Ohio Rev. Code Ann. § 2967.28* allows, and in some circumstances requires, the parole board to subject a prisoner to post-release control upon his release from prison, during which the released prisoner must comply with certain guidelines. If the released prisoner violates the control guidelines, alternative sanctions may be imposed, including increased length of post-release control or a prison term.

Constitutional Law: The Judiciary: Case or Controversy: Constitutionality of Legislation
[HN2] The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision. When attempting to demonstrate injury, it is not enough to show a hypothetical or potential injury. Concrete injury in fact must be established to have standing to mount a constitutional challenge.

Constitutional Law: The Judiciary: Case or Controversy: Ripeness

[HN3] Constitutional questions are not ripe for review until the necessity for a decision arises on the record before the court.

COUNSEL: CHARLES E. COULSON, LAKE COUNTY PROSECUTOR, Painesville, OH, (For Plaintiff-Appellee).

R. PAUL LaPLANTE, LAKE COUNTY PUBLIC DEFENDER, CAROLYN KUCHARSKI, ASSISTANT PUBLIC DEFENDER, Painesville, OH, (For Defendant-Appellant).

JUDGES: HON. JUDITH A. CHRISTLEY, P.J., HON. ROBERT A. NADER, J., HON. WILLIAM M. O'NEILL, J. NADER, J., concurs. O'NEILL, J., dissents with Dissenting Opinion.

OPINIONBY: JUDITH A. CHRISTLEY

OPINION: [**387] [*144]

OPINION

CHRISTLEY, P.J.

Appellant, Terrell Spikes, appeals the sentence imposed by the Lake County Court of Common Pleas following his conviction for failure to comply with an order or signal of a police officer, in violation of *R.C. 2921.331*. For the reasons that follow, we affirm the judgment of the trial court.

Subsequent to appellant's written plea of guilty, the trial court sentenced appellant to an agreed six-month prison term at the Lorain Correctional Institution. In the sentencing entry, the trial court indicated that it had notified appellant "that bad time may be imposed by the Parole Board under *Revised Code Section 2967.11*[***2] for certain rule violations committed while in prison." As part of his sentence, appellant was ordered to serve any bad time subsequently imposed.

[**388] Appellant was also notified that post-release control was optional in his case up to a maximum of three years, and was ordered to serve as part of his sentence any term of post-release control imposed by the Parole Board, as well as any prison term for a violation of that post-release control.

Appellant perfected a timely appeal, asserting one assignment of error:

"By sentencing the appellant pursuant to *Sections 2967.11* and *2967.28 of the Ohio Revised Code*, as amended by Senate Bill 269, the trial court relied on unconstitutional legislation and instituted an unlawful sentence."

In his sole assignment of error, appellant challenges the constitutionality of *R.C. 2967.11* and *2967.28* on due process, double jeopardy, separation of powers, and equal protection grounds.

[HN1] *R.C. 2967.11* establishes a system whereby the parole board may extend the sentence of a prisoner if he or she is found to have committed an act in prison that would constitute a criminal offense. This has been labeled "bad time." *R.C. 2967.28* allows, and in some circumstances[***3] requires, the parole board to subject a prisoner to "post-release control" upon his release from prison, during which the [*145] released prisoner must comply with certain guidelines. If the released prisoner violates the control guidelines, alternative sanctions may be imposed, including increased length of post-release control or a prison term. In his assignment of error, appellant challenges the constitutionality of the provisions permitting increased control and/or jail time.

However, it is apparent that appellant lacks standing to challenge the constitutionality of the statutory provisions at this time and that the constitutional issues raised herein are not presently ripe for review. n1 It is well-established that [HN2] "the constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." *Palazzi v. Estate of Gardner (1987), 32 Ohio St. 3d 169, 512 N.E.2d 971,* syllabus.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 Although the limited record before this court does not indicate whether appellant objected to the statutes on constitutional grounds at the trial court level, it is apparent that appellant similarly lacked standing to challenge the statutory provisions at the time of sentencing for the reasons explained in this opinion.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[***4]

When attempting to demonstrate injury, it is not enough to show a hypothetical or potential injury. *State*

*ex rel. Consumers League of Ohio v. Ratchford (1982), 8 Ohio App. 3d 420, 424, 457 N.E.2d 878*. "Concrete injury in fact" must be established to have standing to mount a constitutional challenge. Id.

Moreover, it is also well-established that [HN3] constitutional questions are not ripe for review until the necessity for a decision arises on the record before the court. *Christensen v. Bd of Cmmrs. on Grievances and Discipline (1991), 61 Ohio St. 3d 534, 535, 575 N.E.2d 790*.

In the case at bar, appellant has not alleged that he has been subjected to the "bad time" provisions of *R.C. 2967.11* or the post-release control provisions of *R.C. 2967.28*. Nor does the record indicate that he has been so subjected. He merely claims that because he was sentenced pursuant to these provisions, he has the potential to be subjected to extended prison time or post-release control. Thus, appellant currently lacks standing to challenge these provisions, and the issues raised are not yet ripe for review.

Appellant's challenge to the constitutionality of *R.C. 2967.11*, the "bad time" provision, [***5] will not be ripe for consideration until the conduct report, the charging instrument for bad time, n2 is given to appellant by [**389]the institutional investigator [*146] after reviewing and approving it for hearing by the bad time panel. We liken the bad time proceedings to a criminal prosecution under an indictment, information, or complaint and find them sufficiently analogous to assist in determining when appellant will obtain standing to challenge these statutory provisions. In a traditional criminal prosecution, the defendant is indicted by a grand jury or is charged under an information or complaint. If he wishes to raise a challenge to these charging instruments, he must do so in a pretrial motion or risk waiver. Crim.R. 12(B)(2). See, also, *State v. Musser, 1985 Ohio App. LEXIS 9801* (Dec. 20, 1985), Trumbull App. No. 3517, unreported. For instance, if the defendant is charged by indictment, information, or complaint with a crime, such as child endangering, and he claims the child endangering statute is unconstitutional, he must bring that challenge in a motion before trial if he wishes to preserve the issue for appeal.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 The conduct report contains the allegations against the defendant regarding his infraction, i.e., criminal act, which may result in the imposition of bad time if the allegations are shown to be true. *Ohio Adm.Code 5120-9-091(B)(1)*.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[***6]

Likewise, a defendant may bring a challenge to the constitutionality of the bad time statute once a decision has been made by the institutional investigator to go forward with a bad time hearing and a copy of the conduct report is given to the accused inmate. See *Ohio Adm.Code 5120-9-091(B)(1)*-(B)(3). At this point, "proceedings" have begun to determine whether the defendant committed an act which would lead to the imposition of bad time and the injury is sufficiently immediate to warrant review. See *Burger Brewing Co. v. Liquor Control Comm. (1973), 34 Ohio St. 2d 93, 97, 296 N.E.2d 261*. We feel it an unnecessary delay to require those who fall under the coverage of the bad time provisions to wait until the panel has decided the defendant committed a crime punishable by bad time or, worse yet, until the defendant actually begins serving bad time before he may mount a challenge to the statute. Once the defendant receives notice that the panel will be considering him for bad time (i.e., receives the approved conduct report), he has standing to challenge the bad time statute, and the issue of the constitutionality of the statute is ripe for consideration.

Similarly, with regard[***7] to post-release control pursuant to *R.C. 2967.28*, when the defendant receives notification that he is being considered by the parole board or the adult parole authority for increased post-release control or a prison term for a violation of a post-release control sanction, he has standing to challenge the post-release control statute and the issue of the constitutionality of that statute is ripe for review. n3 At this point, the defendant has several alternatives to bring his challenge.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 This analysis is limited to the challenges actually raised in this case. Appellant challenges the constitutionality of the provisions that permit increased post-release control time or a prison term for a violation of a condition of the control sanctions. He does not challenge the mere imposition of post-release control. If the latter challenge is raised, the

following guidelines apply: (1) for a mandatory post-release control, he has standing immediately upon sentence; and (2) for a discretionary post-release control, he has standing when the parole board or the adult parole authority notifies him that he is being considered for post-release control sanctions.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[***8]

[*147] If he failed to bring an appeal of his conviction and/or sentence within thirty days of the initial judgment entry of conviction and sentence, he may petition the court of appeals for permission to file a delayed appeal of the initial judgment entry that incorporated any future bad time or post-release control imposition pursuant to App.R. 5(A). Permission rests within the discretion of the appellate court. He may not bring a judicial appeal of the decision of the bad time panel, the warden, the director of the department of rehabilitation, the parole board, or the adult parole authority; no such right was provided [**390] in the statute, nor does the decision of any of these officials fall within the scope of R.C. Chapter 2505 or R.C. Chapter 119.

A second option, unless time is a factor, would be to file a declaratory judgment action under *R.C. 2721.01* et seq., seeking a determination of the constitutionality of the statute. Alternatively, the defendant could petition the appellate or supreme court for a writ of prohibition or file an action for injunction under *R.C. 2727.02* et seq., seeking an order restraining the bad time panel or the parole board from commencing the proceedings. [***9] However, these alternative remedies are granted only in limited circumstances and are subject to very stringent requirements.

Once the defendant has completed his initial term and begins serving any bad time imposed upon him, or once he is imprisoned for a violation of a post-release control sanction, he may file a petition for a writ of habeas corpus and claim he is being held in violation of the constitution. The availability of any one of these mechanisms to test the constitutionality of the bad time or post-release control statutes will be dependent upon the particular facts of each case.

In the case at bar, appellant has failed to allege a concrete injury which would establish standing to bring the instant appeal. We, therefore, conclude that the necessity for a decision on these constitutional challenges is not apparent from the record at this time, and the issues are, thus, not ripe for review.

We note that other appellate courts have similarly decided the issue. See *State v. Davis, 1997 Ohio App. LEXIS 5966* (Dec. 31, 1997), Miami App. No. 97 CA 17, unreported (Second District); *State v. Cusac, 1998 Ohio App. LEXIS 1817* (Apr. 22, 1998), Hancock App. No. 5-97-39, unreported [***10] (Third District); *State v. Shearn, 1998 Ohio App. LEXIS 1930* (Apr. 13, 1998), Coshocton App. Nos. 97-CA-10, 97-CA-12, 97-CA-19, 97-CA-25, unreported (Fifth District); *State v. Somerlot, 1998 Ohio App. LEXIS 165* (Jan. 23, 1998), Erie App. No. E-97-002, unreported (Sixth District).

[*148] We expressly indicate that nothing in our mandate in this case should be construed as creating a bar by way of res judicata or collateral estoppel that in any way would prohibit appellant from prospectively again raising the constitutionality of the bad time provisions contained in *R.C. 2967.11* or the post-release control concept set forth in *R.C. 2967.28* under a proper factual predicate.

The judgment of the trial court is affirmed.

PRESIDING JUDGE JUDITH A. CHRISTLEY

NADER, J., concurs,

O'NEILL, J., dissents with Dissenting Opinion.

DISSENTBY: WILLIAM M. O'NEILL

DISSENT: DISSENTING OPINION

O'NEILL, J.

The very foundation of our state government is the Ohio Constitution which is essentially a mirror image of the most durable document ever written, the United States Constitution. The hallmark of both documents, indeed the cornerstone upon which our government has rested[***11] for over two hundred years, is the guarantee that no person shall be deprived of their rights without due process of law. Key and central to those rights is the right to liberty, or more succinctly, freedom. Our government was founded upon the proposition that no person shall be imprisoned without due process of law. *Ohio Revised Code 2967.11*, which purports to establish a "rules infraction board" within the prison system, is a clear violation of that basic tenet of our government; and any effort to "sentence" a prisoner to additional "bad time" by a quasi-judicial prison official is not only morally offensive, it is unconstitutional.

As stated by the Supreme Court of Ohio in *State v. Hochhausler (1996), 76 Ohio St. 3d 455, 463, 668 N.E.2d 457,* the separation of powers, which clearly provides for judicial review before one's liberty may be infringed upon, is deeply imbedded in the framework of our state government. [**391] The logic is unassailable. There simply must be a neutral magistrate, at whatever level of the judiciary, standing between the accused who wants to remain free, and the law enforcement officials whose very function in society is to facilitate the process of placing[***12] law offenders behind bars. Policemen and jail officials serve a necessary and commendable function in any free society. They protect all citizens from criminals. It is never their job, however, to determine which criminal should be in jail and which one should be free. In an analogous constitutional review, the Supreme Court of Ohio described the weighing exercise which is essential prior to the infringement of any individual right which must be temporarily deferred in the public interest:

"Briefly summarized, this court is required to apply the federal constitutional standards of probable cause as pronounced by the United States Supreme Court. [*149] *State v. Joseph [(1971), 25 Ohio St. 2d 95, 267 N.E.2d 125]*. The recurring polestar and fundamental theme in such pronouncements is that the constitutional mandate of the Fourth Amendment that 'no warrants shall issue but upon probable cause' requires the interposing of a neutral magistrate between the officer and a citizen's right of privacy (see *Johnson v. United States [1948], 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367), ***". State v. Graddy (1978), 55 Ohio St. 2d 132, 134, 378 N.E.2d 723.*

Therefore it is clear[***13] that the Supreme Court of Ohio has decided that before one constitutional right may be infringed upon, the official seeking permission to so intrude must, as a matter of constitutional law, seek the intervention of a judicial officer as a condition precedent to the intrusion. More directly, the Supreme Court held in *State v. Carter (1994), 69 Ohio St. 3d 57, 64-65, 630 N.E.2d 355,* quoting Chief Justice Earl Warren:

"'*** And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable [***14]caution in the belief" that the action taken was appropriate? Cf. *Carroll v. United States, 267 U.S. 132 [45 S. Ct. 280, 69 L. Ed. 543]* (1925); *Beck v. Ohio, 379 U.S. 89, 96-97 [85 S. Ct. 223, 229, 13 L. Ed. 2d 142, 148]* (1964). Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. See, e.g., *Beck v. Ohio, supra; Rios v. United States, 364 U.S. 253 [80 S. Ct. 1431, 4 L. Ed. 2d 1688]* (1960); *Henry v. United States, 361 U.S. 98 [80 S. Ct. 168, 4 L. Ed. 2d 134]* (1959). And simple "'good faith on the part of the arresting officer is not enough.' *** If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be secure in their persons, houses, papers and effects,' only in the discretion of the police." *Beck v. Ohio, supra,* [379 U.S.] at 97 [ *85 S. Ct. at 229, 13 L. Ed. 2d at 148]*.' (Emphasis added; footnotes omitted.) *Terry [v. Ohio (1968), 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 88 S. Ct. 1868].*"

The United States Supreme Court, in *Johnson v. [***15] U.S. (1948), 333 U.S. 10, 13-14, 92 L. Ed. 436, 68 S. Ct. 367,* clearly recognized that there is a competing interest between society as a whole in its fundamental right to be [*150]protected from criminals and the rights of individuals to be free [**392]from unwarranted government intrusion. As stated by Justice Jackson:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

Incredibly, the Ohio Legislature has created a new, and independent quasi-judicial branch of government within the prison system and granted them the authority to sentence prisoners to additional prison time for so-called "bad time" for offenses theoretically committed in jail. This in-house court system nonsense is clearly at odds with Article IV, Section I of the Ohio Constitution which provides:

"The judicial power of the state is vested in a supreme court, [***16] courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the supreme court as may from time to time be established by law."

The various courts of this state have consistently held, and this Court in my opinion should immediately hold, that any violation of the separation of powers inherent in our system of government is unconstitutional and shall not be permitted. The Ohio Constitution applies the principle in defining the nature and scope of powers designated to the three branches of the government. *State v. Warner (1990), 55 Ohio St. 3d 31, 564 N.E.2d 18;* see, *State v. Harmon (1877), 31 Ohio St. 250, 258.* Furthermore, "'each of the three grand divisions of the government, must be protected from encroachments by the others, so far that its integrity and independence may be preserved.***'" *South Euclid v. Jemison(1986), 28 Ohio St. 3d 157, 159, 503 N.E.2d 136,* (quoting *Fairview v. Giffee [1905], 73 Ohio St. 183, 187, 76 N.E. 865).*

This fundamental failure to protect the due process rights of those charged with misdeeds while imprisoned literally ignores court precedent in Ohio and attempts to create a new class of citizen[***17] who has no rights. In an analogous situation, every day law enforcement officials seek to terminate the privilege of probation when they feel a probationer has failed to live up to his side of the bargain. In a well reasoned opinion, the Tenth District Court of Appeals, in *Columbus v. Bickel (1991), 77 Ohio App. 3d 26, 34, 601 N.E.2d 61,* stated as follows:

"To preserve a probationer's liberty as long as he substantially complies with his conditions of probation, the United States Supreme Court in *Gagnon v. Scarpelli (1973), 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656,* established both a bipartite procedure for probation revocation when a sentence has previously been [*151] imposed, as well as six minimum due process requirements applicable in final probation revocation hearings. See, also, *State v. Miller (1975), 42 Ohio St. 2d 102, 71 Ohio Op. 2d 74, 326 N.E.2d 259.* First, a preliminary hearing is conducted to determine whether there is probable cause that a probationer violated one or more conditions of his probation. Only after this wholly factual question is answered affirmatively may the court conduct a final revocation hearing to determine whether probation should be[***18] revoked or continued. *Morrissey v. Brewer (1972), 408 U.S. 471, at 479-480, 92 S. Ct. 2593, at 2599-2600, 33 L. Ed. 2d 484, at 493.* At the final revocation hearing, the court must comply with the following six minimum due process requirements:

"'"(a) Written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body *** and (f) a [**393] written statement by the factfinders as to the evidence relied on and reasons for revoking parole." ***' *Id. at 489, 92 S. Ct. at 2604, 33 L. Ed. 2d at 499; Gagnon, supra, 411 U.S. at 786, 93 S. Ct. at 1761, 36 L. Ed. 2d at 664.*"

Note the distinction. A probation violator about to lose a privilege is afforded far more due process guarantees than a prisoner who is about to lose a constitutional right. *R.C. 2967.11* requires sentencing courts to abdicate part of their sentencing authority, permitting an institutional "rules[***19] infraction board" to add time to a prisoner's sentence. In extending a prisoner's sentence for bad acts allegedly committed in jail, the state by definition is taking away a fundamental constitutional right to liberty. The Supreme Court of Ohio has clearly stated this cannot be done without the intervention of the judiciary in a meaningful hearing, and I agree.

The majority suggests that this issue is not ready for review by this Honorable Court because the appellant herein has not actually yet received any "bad time." I must respectfully disagree. In the sentencing entry, the trial court has clearly indicated that they ratify and incorporate in their sentence any future additions to the sentence which may be imposed by the use of *R.C. 2967.11* and ordered the defendant to serve "any bad time imposed." This purported transfer of sentencing authority to prison guards and their in-house tribunals can never be tolerated in a free society. The minute the ink was dry on the judge's entry, the prisoner was in peril at the whim of his jail keepers. Bad time? It's a good phrase. For if the Ohio Legislature is successful in permitting jailers to determine how long[***20] prisoners remain in jail, it is a bad time for us all indeed.

JUDGE WILLIAM M. O'NEILL