# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

John R. Walker,
    Petitioner


    vs.                        Case No. 1:01cv 848
                                       (Weber, J.; Black, M.J.)

Jeffrey A. Wolfe, Warden,
    Respondent


---

## REPORT AND RECOMMENDATION

---

       Petitioner, formerly an inmate in state custody at the Noble Correctional Institution in Caldwell, Ohio, brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 1999 conviction for felonious assault based on a guilty plea. (*See* Doc. 1). This matter is before the Court on respondent's motion to dismiss the petition as time-barred, petitioner's opposition, and respondent's reply, as supplemented. (Doc. 33, 37, 38, 39).

### Procedural Background

       On September 24, 1999 the Hamilton County, Ohio grand jury indicted petitioner on one count of Felonious Assault. (Doc. 8, Ex. 2). Petitioner pled guilty to the charge. (Doc. 33, Ex. 1). In the entry withdrawing the plea of not guilty and entering a plea of guilty, signed by petitioner, petitioner acknowledged that after his release from prison, he "may have . . .up to 3 years of post-release control." (*Id.*). In addition, at the plea taking proceeding the following exchange took place:

The Court: Do you understand that if you're sentenced to prison the parole board can subject you to up to three years of post-release control; and if you violate that control, you could be sent back to serve up to an additional one half of the original sentence?

The Defendant: Yes, your Honor.

(Doc. 42, Attachment 1, Transcript).  On December 1, 1999, petitioner was sentenced to a term of imprisonment of three years, and credited for eighty-three (83) days. (Doc. 33, Ex. 2).  Petitioner did not file a timely direct appeal within thirty days of the entry of the judgment pursuant to Ohio R. App. P. 4(A).  (Doc. 33 at 2).

On May 8, 2001, petitioner filed a motion for judicial release. (Doc. 33, Ex. 3).  By decision and judgment entry of May 10, 2001, the motion was denied. (*Id*., Ex. 4).

On May 24, 2001, petitioner filed a pro se motion for delayed appeal in the First Appellate District Court of Appeals of Ohio in Case No. C-0100344. (Doc. 33, Ex. 5). As justification for his delay, petitioner asserted that his counsel refused to file a timely appeal on his behalf and that others in the institution including law clerks at the institutional library advised him that he waived his right to an appeal by pleading guilty.  (*Id.* at 3).   By order of June 29, 2001, the Court of Appeals denied petitioner's motion for the reason that he had "failed to provide sufficient reasons for failure to perfect an appeal as of right." (Doc. 33, Ex. 7).  Petitioner further appealed to the Supreme Court of Ohio, which declined jurisdiction and dismissed the appeal on October 24, 2001. (Doc. 33, Exs.  8, 9).  In his memorandum in support of jurisdiction,  petitioner asserted that he was denied the right to "be free from violations of fundamental rights to procedural due process and doctrine of Separation of Power –Ohio Revised Code § 2967.28 et seq. – which offends the very notion of the Bill of Rights." (Doc. 33, Ex. 8 at 14, 15).

Petitioner filed a petition for certiorari in the United States Supreme Court. (Doc. 33 at 2).  On February 19, 2002, the United States Supreme Court denied the petition for a writ of certiorari.  *See Walker v. Ohio*, 534 U.S. 1155 (2002).

On September 10, 2001, while petitioner's appeal to the Supreme Court of Ohio was pending, petitioner filed a "Petition for Writ of Mandamus and/or

2

Procedendo." (Doc. 33, Ex. 11).  While the petition did not directly challenge the conviction and sought to compel actions from various county officials, petitioner alleged that the information sought would assist his appeal in the Supreme Court of Ohio. (Doc. 33, Ex. 11 at 20).  On November 7, 2001, the Supreme Court of Ohio dismissed the petition. (Doc. 33, Ex. 12).

Petitioner filed the instant federal habeas corpus petition, file stamped December 6, 2001, alleging the following grounds for relief and supporting facts:

**Ground one**:   The petitioner was denied the effective assistance of counsel in the trial proceedings in violation of his V, VI, VIII, XIV, Amend[ment] rights.

Supporting facts: Trial court counsel, Atty. Larry Keller failed to file the Pet's notice of appeal, a purely "ministerial duty", despite the Petitioner's requests; counsel withheld from his client his trial court documents until May 27, 2001, after Petitioner had made a flawed, futile attempt to gain a delayed, first appeal of right; and he caused Petitioner to default this instant procedure, so the Petitioner must pray for equitable tolling to be granted.

**Ground two**:  The petitioner's guilty [plea] is not valid because it was not knowingly, intelligently, or voluntarily made in violation of his rights.

Supporting facts: The Petitioner's guilty plea is not not [sic] valid because it was the product of coercion and threats from the bench and constitutionally ineffective assistance of trial counsel where he was deprived the presence of counsel during critical stages of the prosecution–interrogation, police line-up, arraignment, reading of the indictment, pretrial conference, and ineffectively represented the Petitioner before trial by allowing him to be saddled with a "fast-track" plea bargain agreement, an invalid contract.

3

**Ground three**: O.R.C. § 2967.28, Post-Release Control is unconstitutional and infringes on the Doctrine of Separation of Powers; U.S.C.A. V & XIV.

> Supporting facts: Since the petitioner was not properly notified at the Criminal Rule 11 colloquy, he was not aware that on October 4, 2001, he would be sanctioned to three years of Post-Release Control. Thus, he was equally deceived about his loss of freedom, i.e., he would be detained further in Ohio and not able allowed to return to his family in Virginia. The statute creates a quasi-judicial court and offends the very notion of the Bill of Rights.

**Ground four**: Because of ineffectiveness of trial counsel, the Petitioner was deprived of his Constitutionally guaranteed rights, as follows:

> Supporting facts: The right to–a fair and speedy trial by jury; not suffer cruel and unusual punishment–police brutality and medical neglect; suppress illegal evidence; discovery of exculpatory evidence; an impartial judge, unaffected by personal bias; be secure from attorney conflicts; a timely appeal of right; be secure from illegal arrest and search and seizure; invoke his privilege against self-incrimination, un-Mirandized, uncounseled interrogation.

(Doc. 1 at 5-6).

On March 6, 2003, this Court administratively stayed these proceedings to provide petitioner the opportunity to exhaust his state court remedies with respect to his third claim for relief. (Doc. 24). On April 8, 2003, petitioner filed a second motion for a delayed appeal in the Ohio Court of Appeals requesting that he be relieved of post-release control. (Doc. 33, Ex. 13). On May 9, 2003, the Ohio Court of Appeals overruled petitioner's motion because he had failed to provide sufficient reasons for failing to file a timely appeal. (Doc. 33, Ex. 17). Petitioner's further appeal to the Supreme Court of Ohio resulted in the Court's September 24, 2003 entry declining jurisdiction to hear the case. (Doc. 33, Exs. 18, 19).

4

On October 23, 2003, petitioner moved to reopen his case in this Court and on March 19, 2004, this Court granted his motion. (Docs. 26, 29).

## OPINION

Respondent argues that the instant petition is barred from review by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2244(d)(1), a person in custody pursuant to the judgment of a state court must file an application for writ of habeas corpus within one year from the latest of: (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

Petitioner concedes that his petition was filed after the expiration of the one year statute of limitations. (Doc. 1, Memorandum at 3, Doc. 37 at 2). Nevertheless, he argues in his opposition to the motion to dismiss that § 2244 (d)(1)(D) should serve to delay the start date of the limitations period because "the facts could not have been discovered through the exercise of due diligence previously before the statute of limitations had expired." (Doc. 37 at 4). In his first, second and fourth claims for relief, petitioner alleges that his counsel provided constitutionally ineffective assistance and that his guilty plea was not knowingly and voluntarily entered. These claims involve allegations of error occurring at, before or immediately after petitioner's plea. Petitioner argues that § 2244(d)(1)(D) should apply because he lacked knowledge of the evidence used against him until he received a package from the Ohio Disciplinary Counsel in May of 2001, eighteen

months after his conviction.[1] (Doc. 37 at 5). The § 2244(d)(1)(D) time bar "runs from the date a petitioner is on notice of the facts which would support a claim, not from the date on which petitioner has in his possession evidence to support his claim." *Rodriquez v. People of the State of New York*, No. 01Civ. 9374KMWAJP, 2003 WL 289598, at *15 (S.D.N.Y. Feb. 11, 2003) (and cases cited therein); *Hereford v. McCaughtry*, 101 F. Supp.2d 742, 745 (E.D. Wis. 2000). As a second reason for the application of § 2244(d)(1)(D) petitioner cites his recent diagnosis of mental illness based on an examination conducted in October 2003. (Doc. 37 at 4). He argues that as a result of his illness he was in a "fugue" state. (*Id.* at 3). However, there is no evidence on the record supporting petitioner's claim that he suffered from mental illness during the year after his conviction or that it affected him to the point that he was unaware of the factual bases of his claims. Petitioner fails to persuade this Court that the underlying factual bases of these claims could not have been discovered through the exercise of due diligence before the conclusion of direct review in the Ohio courts. Petitioner was present at the plea and he was involved in conversations with his attorney concerning his appeal. Therefore, it appears the petition is governed by 28 U.S.C. § 2244(d)(1)(A), which provides that the statute of limitations begins to run from the date on which the challenged judgment became "final" by the conclusion of direct review or the expiration of time for seeking such review.

Petitioner further argues that he could not have discovered the underlying factual basis of his claim challenging the constitutionality of post-release control until October 4, 2001, when the Ohio Adult Parole Authority notified petitioner that he would be placed in post-release control, and that accordingly, that claim should also be governed by § 2244(d)(1)(D). Magistrate Judge Sherman agreed with petitioner's position in his first Report and Recommendation (Doc. 15 at 3). However, respondent now raises additional points which were not considered by the Magistrate Judge. Respondent argues that petitioner recognized the issue at the time of his plea. First, petitioner was advised that he would be subject to post-release control in the guilty plea form he signed. (Doc. 33, Ex. 1). Petitioner was again advised by the Court at the plea taking proceeding of the prospect of post-release control and he acknowledged his understanding. (Doc. 42, Attachment 1,

---

[1]Petitioner filed a grievance concerning his attorney's representation in this case with the Ohio Disciplinary Counsel in December 2000. (Doc. 10 at 5). The Disciplinary Counsel determined that disciplinary action was not warranted because their investigation failed to disclose any ethical violations or improprieties. (Doc. 10, Ex. 4).

Transcript). Magistrate Judge Sherman did not have access to the plea colloquy, which this Court ordered respondent to file after this case was reinstated. (Doc. 40). Second, respondent correctly states that petitioner's post release control was mandatory under Ohio Rev. Code § 2967.28(B)(2) because he committed a felony of the second degree, felonious assault. (Doc. 38 at 8). Third, that petitioner understood before the October 4, 2001 notification date that post-release control would follow his imprisonment was evident by his raising the claim challenging the constitutionality of post-release control as part of his direct appeal in his brief to the Supreme Court of Ohio, dated August 9, 2001. (Doc. 33, Ex. 8 at 14, 15; *see* Doc. 38 at 8).

Ohio law provides yet another reason weighing in favor of finding that petitioner could have discovered with due diligence by the time of sentencing the factual basis of his post-release control claim. In some of Ohio's Courts of Appeal, defendants have standing immediately upon sentencing to challenge the constitutionality of Ohio Rev. Code § 2967.28, particularly when post-release control is mandatory. *See State v. Morris,* No. C-000027, 2000 WL 1161995, at *2 (Ohio Ct. App. Aug. 18, 2000) (Hamilton County); *State v. Swank,* No. 93-L-049, 2001 WL 1647224, at *7 n.8 (Ohio Ct. App. Dec. 21, 2001). *But see, e.g., State v. Buckney,* No. 2000-CH-9, 2000 WL 1838247, at *5 (Ohio Ct. App. Dec. 15, 2000).

Petitioner fails to persuade this Court that the underlying factual bases of his challenge to post-release control could not have been discovered through the exercise of due diligence before the conclusion of direct review in the Ohio courts.[2]

---

[2]Assuming, arguendo, that petitioner's post-release claim could not have been discovered until the actual imposition of post-release control and was therefore not barred by the statute of limitations, petitioner's claim would fail on the merits. In *Woods v. Telb,* 733 N.E.2d 1103 (Ohio 2000), the Ohio Supreme Court held that Ohio Rev. Code § 2967.28, the post-release control statute, was constitutional to the extent that it does not violate the separation of powers doctrine or the due process clause. The holding applies to both mandatory and discretionary post-release control. *See State v. Kinsey,* No. 826, 2001 WL 576170, at *4 (Ohio Ct. App. May 16, 2001) ). *But cf. State v. Johnson,* No. 80459, 2002 WL 2027521, at *3 (Ohio Ct. App. Sept. 5, 2002) (*Woods* only applies to constitutionality of discretionary post-release control but mandatory post-release control does not implicate the separation of powers doctrine because the parole authority exercises no discretion over whether offender is subject to sanctions). In order for Ohio Rev. Code § 2967.28 to be considered constitutional, *Woods* required that the trial court inform the offender "at sentencing or at the time of a plea hearing that post-release control is part of the offender's sentence." *Woods,* 733 N.E.2d at 1109. Because petitioner was so advised, his

Therefore, it appears that this claim, like the others petitioner raises, is governed by 28 U.S.C. § 2244(d)(1)(A), which provides that the statute of limitations begins to run from the date on which the challenged judgment became "final" by the conclusion of direct review or the expiration of time for seeking such review.

In this case, because petitioner did not file a timely direct appeal from the challenged judgment of conviction and sentence, his conviction became "final" within the meaning of 28 U.S.C. § 2244(d)(1)(A) on January 1, 2000, when the thirty-day period for filing a timely appeal to the Ohio Court of Appeals expired. *See* Ohio R. App. P. 4(A); *cf. Lucas v. Carter,* 46 F.Supp.2d 709, 711 (N.D. Ohio 1999). The period of limitation began to run on the following day. Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000). It expired one year later in January of 2001, absent any tolling.

An argument can be made that a motion for delayed appeal is part of the direct appeal within the meaning of 28 U.S.C. § 2244(d)(1)(A), and therefore that the statute of limitations did not begin to run until after petitioner completed his delayed appeals. However, this argument was expressly rejected by the Sixth Circuit in *Searcy v. Carter,* 246 F.3d 515 (6th Cir. 2000), *cert. denied,* 534 U.S. 905 (2001), where the court declined to find as argued by the petitioner that the AEDPA's statute of limitations was "retriggered" or began to run anew when the Supreme Court of Ohio denied the petitioner's motion for delayed appeal. *Searcy,* 246 F.3d at 519. In so ruling, the court expressed its approval of the district court's reliance on the following "rationale of a sister court from the Second Circuit:"

> [The petitioner's argument] is a position that we cannot endorse, because it would effectively eviscerate the AEDPA's statute of limitations. Leave to file a late notice of appeal can be sought at any time, even many years after conviction. If the one-year period of limitations did not begin to run until such an application for leave was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief. The

---

claim of unconstitutionality would not prevail.

> statute of limitations provision of the AEDPA would thus
> be effectively eliminated, a clearly unacceptable result.

*Raynor v. Dufrain,* 28 F.Supp.2d 896, 898 (S.D.N.Y. 1998).

*Searcy,* 246 F.3d at 519.  The court went on to hold that although the denial of a delayed appeal motion does not restart the clock at zero, it may serve to toll the running of the limitations period.  *Id.; cf. Miller v. Collins,* 305 F.3d 491, 494 (6th Cir. 2002) (delayed appeal to Supreme Court of Ohio "tolled the one-year statute of limitations while it was pending" before that court).   This Court is bound by *Searcy* and, therefore, similarly concludes that petitioner's motions for delayed appeal, which were denied by the Ohio Court of Appeals, did not restart the one-year limitations period under 28 U.S.C. § 2244(d)(1)(A), but rather could only serve to toll the running of a clock that had not yet fully expired.  *But cf. Lambert v. Warden, Ross Correctional,* 81 Fed.Appx. 1, 7-8 (6th Cir. Sept. 2, 2003) (not published in Federal Reporter) (while acknowledging that *Searcy* "is binding precedent with respect to non-26(B) delayed appeals," and was authored by the same judge who authored *White v. Schotten,* 201 F.3d 743, 752-54 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000), the majority opinion pointed out in dicta that *Searcy* was decided "in direct contradiction to *White*").

Here, petitioner's motions for delayed appeal to the Ohio Court of Appeals could  not serve to toll the running of the statute of limitations.  As discussed above, *see supra* p. 8, the statute commenced running on January  2, 1999 and expired one year later on January 2, 2000.  Therefore, no time remained in the limitations period that could be tolled when petitioner filed his motion for delayed appeal with the Ohio Court of Appeals on May 24, 2001, five months after the statute of limitations had run its course, or on April 8, 2003, two and a half years after the limitations period had expired.  *Cf.  Winkfield v. Bagley,* 66 Fed.Appx. 578, 582, 2003 WL 21259699, at *3 (6th Cir. May 28, 2003) (not published in Federal Reporter), *cert. denied,* 124 S.Ct. 435 (2003).

During the one-year limitations period,  petitioner was entitled to the benefits of the tolling provision set forth in 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review.  *See* 28 U.S.C. § 2244(d)(2); *Bennett v. Artuz,* 199 F.3d 116, 119 (2nd Cir. 1999), *aff'd,* 531 U.S. 4 (2000); *Gaskins v. Duval,* 183 F.3d 8, 10 (1st Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998) (per curiam); *Hoggro v.*

*Boone,* 150 F.3d 1223, 1226 (10th Cir. 1998); *Lovasz v. Vaughn*, 134 F.3d 146, 148-49 (3rd Cir. 1998); *cf. Morris v. Bell,* 124 F.3d 198 (table), No. 96-5510, 1997 WL 560055, at *3 (6th Cir. Sept. 5, 1997), *cert. denied,* 522 U.S. 1149 (1998). The tolling provision, however, does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully expired." *Winkfield*, 2003 WL 21259699, at *3 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)); *see also Smith v. McGinnis,* 208 F.3d 13, 16-17 (2nd Cir.) (and cases cited therein), *cert. denied,* 531 U.S. 840 (2000); *Sorce v. Artuz,* 73 F. Supp.2d 292, 294 (E.D.N.Y. 1999) (and cases cited therein). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Winkfield,* 2003 WL 21259699, at *3 (citing *Rashid,* 991 F. Supp. at 259); *cf. Cox v. Angelone,* 997 F. Supp. 740, 743-44 (E.D. Va. 1998); *Healy v. DiPaolo,* 981 F. Supp. 705, 706-07 (D. Mass. 1997).

Petitioner's motion for judicial release would not serve to toll the limitations period because at the time it was filed (May 8, 2001), the limitations period had long expired (January 2, 2001). Similarly, petitioner's "Petition for Writ of Mandamus and/or Procedendo" filed in the Supreme Court of Ohio would not toll the limitations period because it too was filed after the limitations period had expired. (September 10, 2001).

Petitioner's habeas corpus petition was due to be filed on January 2, 2001. Petitioner did not file the instant petition until November 28, 2001,[3] eleven months too late.

The statute of limitations may be equitably tolled in limited circumstances. *Dunlap v. United States,* 250 F.3d 1001, 1008 (6th Cir.), *cert. denied,* 534 U.S. 1057 (2001); *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988). In determining

---

[3]Under *Houston v. Lack,* 487 U.S. 266 (1988), the filing date for a habeas corpus petition is actually the date on which the pro se prisoner provides his papers to prison authorities for mailing. *See, e.g., Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir.), *cert. denied,* 537 U.S. 1091 (2002); *Marshall v. Tyszkiewicz,* No. 99-1364, 2000 WL 924483, at **1 (6th Cir. June 28, 2000); *see also In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997). In this case, the record is unclear as to when petitioner actually provided his petition to prison authorities for mailing. The petition was stamped "filed" on December 6, 2001 by the Clerk's Office. On November 28, 2001, petitioner executed the petition. Accordingly, the earliest possible date that the petition could have been mailed is November 28, 2001.

whether the statute of limitations should be equitably tolled, the court considers the following factors:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap,* 250 F.3d at 1008  (citing *Andrews,* 851 F.2d at 151).  The absence of prejudice is not an independent basis for invoking the doctrine of equitable tolling. *Dunlap,* 250 F.3d at 1009;  *Andrews,* 851 F.2d at 151(citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 (1984)).  The absence of prejudice may only be considered, when other factors of the test are met. (*Id.*).  In determining whether to equitably toll a period of limitations, the court may consider additional factors and may decline to consider factors which are not relevant to the particular case.  *Miller,* 305 F.3d at 495 (citing *Cook,* 295 F.3d at 521).  Whether a petitioner is entitled to equitable tolling must be decided on a case-by-case basis. *Id.*

Petitioner argues that he is entitled to equitable tolling for several reasons. He maintains that his attorney refused to file a timely appeal on his behalf.  (Doc. 37 at 5-6; Doc. 33, Ex. 5 at 3, 5).  He argues that his mental illness prevented him from timely filing his petition. (Doc. 37 at 5).  The misleading advice of law clerks at the institutional library and the inadequacy of the library further contributed to the delay. (Doc. 37 at 5; Doc. 33, Ex. 5 at 3).  His inability to retrieve evidentiary documents until after the delayed appeal also hindered his efforts to timely file his state court appeals. (Doc. 37 at 5).

Whether true or not, error of an attorney generally is not a basis for equitable tolling. *See Beery v. Ault,* 312 F.3d 948, 951 (8th Cir. 2002) (ineffective assistance of counsel generally does not warrant equitable tolling), *cert. denied,* 539 U.S. 933 (2003); *Molo v. Johnson,* 207 F.3d 773, 775 (5th Cir. 2000) (denial of appeal due to ineffective assistance of counsel does not equitably toll AEDPA statute of limitations); *Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999) (lawyer's mistake not valid basis for equitable tolling); *Sandvik v. United States*, 177 F.3d 1269, 1270 (11th Cir. 1999)(attorney negligence not a basis for equitable tolling); *Rodriquez*, 2003 WL 289598, at *20 (and cases cited therein); *Collier v. Dretke*, No. 3:03-CV-

11

2744-L, 2004 WL 1585903, at *3 (N.D. Tex. July 13, 2004) (Findings, Conclusions and Recommendations of the Magistrate Judge)(ineffective assistance of appellate counsel does not warrant equitable tolling); *Godfrey v. Beightler*, No. C-2-01-397, 2002 WL 485015, at *2 (S.D. Ohio) (ineffective assistance of counsel does not support equitable tolling), *aff'd,* 54 Fed. Appx. 431, 2002 WL 31805606 (6th Cir. 2002), *cert. denied,* 540 U.S. 865 (2003). *See also Brown v. United States*, 20 Fed. Appx. 373, 375, 2001 WL 1136000 (6th Cir. 2001)(unpublished); *Elliott v. DeWitt*, 10 Fed. Appx. 311, 312, 2001 WL 523527 (6th Cir. 2001)(unpublished). Accordingly, petitioner is not entitled to equitable tolling on the ground that his attorney rendered ineffective assistance of counsel by refusing to file his direct appeal.

Generally, a statute of limitations may be equitably tolled by reason of mental illness "only if the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Smith v. Smith,* No. 02-CV-72296-DT, 2003 WL1867807, at *4 (E.D. Mich. April 11, 2003) (quoting *Miller v. Runyon,* 77 F.3d. 189, 191 (7th Cir., *cert. denied,* 519 U.S. 937 (1996)); *see Nowak v. Yukins,* 46 Fed.Appx. 257, 259, 2002 WL2026196, at **2 (6th Cir. Aug. 27, 2002), *cert. denied,* 537 U.S. 1197 (2003). The petitioner has the burden of showing that his mental health problems caused him to be unable to file his habeas corpus petition within the one year limitation period. *See, e.g., Nowak,* 46 Fed.Appx. at 259, 2002 WL2026196, at **2 (citing *Nara v. Frank,* 264 F.3d 310, 320 (3rd Cir. 2001), *overruled in part on other grounds by Carey v. Saffold,* 536 U.S. 214 (2002)); *Brown v. McKee,* 232 F. Supp.2d 761, 768 (E.D. Mich. 2002) (citing *Rhodes v. Senkowski,* 82 F.Supp.2d 160, 173 (S.D.N.Y. 2000)); *cf. Laws v. Lamarque,* 351 F.3d 919, 923 (9th Cir. 2003) (when mental incompetence in fact caused petitioner to fail to meet filing deadline, delay is caused by extraordinary circumstance beyond petitioner's control, requiring tolling); *Rios v. Mazzuca,* 78 Fed.Appx. 742, 743, 2003 WL 22426961, at **2 (2nd Cir. Oct. 22, 2003) (assuming that mental illness justifies equitable tolling of AEDPA limitation period, petitioner must provide particularized description of how condition adversely affected capacity to pursue rights). The mere existence of a mental illness is insufficient to justify equitably tolling the AEDPA's statute of limitations. *Brown v. McKee,* 232 F. Supp.2d at 767 (citing *Rhodes,* 82 F.Supp.2d at173). Conclusory allegations are also insufficient to invoke equitable tolling. *Burnett v. Birkett,* No. 00-10144-BC, 2002 WL 31748843, at *4 (E.D. Mich. Nov. 26, 2002) (citing *Torres v. Miller,* No. 99CIV.0580MBM, 1999 WL 714349 (S.D.N.Y Aug. 27, 1999)); *but cf. Laws,* 351 F.3d at 923 (petitioner's allegation of mental incompetency in a verified state

petition attached to traverse requires further factual development in the form of discovery or expansion of the record before court can determine whether mental impairment precluded timely filing of petition). However, when the record creates a "genuine basis for concern" about the petitioner's mental state, a district court must consider whether petitioner's mental illness precluded the timely filing of his petition. *Crawford v. Oregon State Hospital,* 36 Fed.Appx. 894, 895, 2002 WL 505943, at **1 (9th Cir. March 29, 2002) (citing *Calderon v. U.S. Dist. Court,* 163 F.3d 530, 541 (9th Cir. 1998), *cert. denied,* 526 U.S. 1060 (1999), *overruled on other grounds by Woods v. Garceau,* 538 U.S. 202 (2003)).

In this case, petitioner submitted a "comprehensive psychiatric evaluation" from a clinic in Richmond, Virginia, dated October 9, 2003 diagnosing him as having bipolar disorder and poly substance abuse. (Doc. 37, Ex. 1). More recently, he filed a decision of the Social Security Administration finding that he was entitled to a period of disability beginning September 4, 2002, based in major part on psychiatric impairments. (Doc. 44, Ex. 1). However, there is no evidence in the record of this case that petitioner suffered psychiatric problems in the year 2000 when his habeas corpus petition was due. Notably absent from the record is any concern for petitioner's competency by a court or by counsel or a court ordered competency evaluation. The record is also devoid of any evidence that petitioner became a patient at a correctional facility for treatment of mental illness. *Cf. Crawford,* 36 Fed.Appx. 894, 895-896, 2002 WL 505943, at **1 (district court should have developed record further on petitioner's mental condition before applying time bar because of petitioner's continued confinement in state hospital and state court's initial finding of mental incompetency); *Nara,* 264 F.3d at 319 (evidentiary hearing warranted when petitioner filed habeas petition pro se and presented evidence of "ongoing, if not consecutive, periods of mental incompetency"). Furthermore, there is no mention in petitioner's first delayed appeal that his mental health problems contributed to the late filing of his appeal. (*See* Doc. 33, Ex. 5).

Petitioner's ability to file two motions for delayed appeal to the Ohio Court of Appeals, a federal habeas corpus petition and other pleadings in this Court dictate against a finding that petitioner's mental illness prevents him from managing his legal affairs and acting upon them. *See Rios,* 78 Fed.Appx. at 744, 2003 WL 22426961, at **4; *Howell v. Roe,* No. C 02-1824 SI, 2003 WL 403353, at *4 (N.D. Cal. Feb. 20, 2003); *Brown v. McKee,* 232 F. Supp.2d at 768; *Burnett,* 2002 WL 31748843, at *5; *but cf. Laws,* 351 F.3d at 924 (petitioner's ability to file state and

federal petitions with assistance of inmate does not obviate need to develop record as to petitioner's mental state).

Since the record lacks persuasive evidence that petitioner's mental illness during the limitations period interfered with petitioner's ability to timely file his petition, equitable tolling on the basis of petitioner's mental illness is not justified.

As another justification for his delayed direct appeal, petitioner argued that the law clerks at the institutional law library incorrectly informed him that by pleading guilty he waived his right to an appeal. (Doc. 33, Ex. 5 at 3). Petitioner now argues that those same legal clerks mislead him about the AEDPA's statute of limitations. (Doc. 37 at 5). Erroneous advice by an inmate legal assistant or prison law clerk does not warrant equitably tolling the limitations period. *See Jackson v. Del Papa,* 91 Fed.Appx. 592, 593, 2004 WL 603378, at **1 (9th Cir. March 23, 2004); *Marsh v. Soares,* 223 F.3d 1217, 1220-21 (10th Cir. 2000), *cert. denied,* 531 U.S. 1194 (2001); *Rodriquez,* 2003 WL 289598, at *13 n.19 (and cases cited therein); *Henderson v. Johnson,* 1 F.Supp.2d 650, 655 (N.D. Tex. 1998). The *Henderson* Court explained the underlying reason as follows:

> It is common for prisoners to count on other inmates for assistance in filing lawsuits or seeking habeas relief. . . . Inmates who assist other prisoners with legal matters are not subject to the ethical and fiduciary obligations of lawyers. If their miscreant, inept, or negligent conduct were deemed sufficient of itself to toll the AEDPA limitations period, the time-bar would be rendered virtually meaningless.

1 F.Supp.2d at 65.

As yet another basis for equitable tolling, petitioner alleges that the institutional law library did not have an up-to-date version of 28 U.S.C. § 2254, the habeas corpus statute, or 28 U.S.C. § 2244(d), the relevant statute of limitations, or any other material on the statute of limitations. (Doc. 37 at 5). In response to this allegation, respondent submitted the affidavit of the law librarian, employed at the library since 1999, who stated that during 2000, the Noble Correctional Institution library contained complete volumes of the U.S. Code Annotated including 28 U.S.C. §§2241-2255, the Supreme Court Reporter, the Federal Reporter Second and Third Series, and the Federal Supplement Second and Third Series. (Doc. 43, Ex. 5).

14

Because of the presence of these legal materials in petitioner's institutional library, there is no basis for a finding that petitioner lacked notice or constructive knowledge of the one-year filing requirement for federal habeas corpus petitions. *Cf. McClendon v. Sherman,* 329 F.3d 490, 495 (6th Cir. 2003) (Decisions of the Sixth Circuit issued in late 1999 put petitioner on notice of filing deadline). In any event, it would have been unreasonable for petitioner to remain ignorant of the filing requirement, which has been in effect since April 1996, until November 2001 when he filed the instant petition. Petitioner has failed to demonstrate that he acted with due diligence in pursuing his federal remedy. Therefore, equitable tolling is inappropriate in this case.

Accordingly, in sum, the Court concludes that the instant petition, filed nearly one year after the statute of limitations expired, is time-barred.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 33) be GRANTED, and petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1) be DISMISSED with prejudice as time-barred under 28 U.S.C. § 2244(d).

2. Pursuant to the Supreme Court's ruling in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), this Court finds the petition states a colorable claim of a denial of a constitutional right and, therefore, that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack*, 529 U.S. at 484. In light of the evolving case-law interpreting and applying the one-year statute of limitations governing habeas corpus cases set forth in 28 U.S.C. § 2244(d), the Court further finds "jurists of reason would find it debatable whether this Court is correct in its procedural ruling" that the petition is barred from review on statute of limitations grounds. *Id.* Accordingly, a certificate of appealability should issue solely with respect to the issue addressed in this Order as to whether the petition is barred from review under § 2244(d). *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good

15

faith," and upon a showing of financial necessity, the Court GRANT petitioner leave to appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  November 18, 2004                           s/Timothy S. Black
                                                  Timothy S. Black
                                                  United States Magistrate Judge

J:\ROSENBEH\2254(2004)\01-848sol.wpd

16

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

John R. Walker,
    Petitioner

    vs.                                Case No. 1:01cv 848
                                       (Weber, J.; Black, M.J.)

Jeffrey A. Wolfe, Warden,
    Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

17